Eileen BASS, et al.,
Plaintiffs, Appellants,

v.

Louis CAMPAGNONE,
Defendant, Appellee.

No. 87–1310.

United States Court of Appeals,
First Circuit.

Jan. 29, 1988.

Ina P. Schiff, Providence, R.I., for appellants.

Julius C. Michaelson with whom Michael K. Marran and Abedon, Michaelson, Stanzler & Biener, Providence, R.I., were on brief, for appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff-appellants are four members of Local 2883 of the American Federation of State, County, and Municipal Employees, AFL–CIO (AFSCME). They filed a complaint in November 1985 against the president of Local 2883, Louis Campagnone, alleging that he had used his position to operate the local as a racketeer-influenced and corrupt organization and enterprise in violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982). The United States District Court for the District of Rhode Island granted the defendant's motion to dismiss the complaint, 655 F.Supp. 1390.[1] We affirm.

Plaintiffs contend that the defendant operated, directed, and controlled Local 2883 as a racketeer-controlled and influenced organization in violation of section 1962(c), by

---

1. The complaint is in four counts. Count I, appealed herein, makes out allegations against Campagnone; Count II alleges that Local 2883 negligently failed to adhere to the policies and procedures established by AFSCME and negligently failed to monitor and supervise the activities of Campagnone, in breach of its fiduciary obligation to plaintiffs; and Counts III and IV allege that Council 94, the state AFSCME organization, J. Thomas Chellel, the president of Council 94, Ben Areson, the business agent of Council 94, and AFSCME itself breached their fiduciary duty to plaintiffs by failing to investigate and terminate Campagnone's allegedly unlawful conduct. Although the district court dismissed all four counts, plaintiffs have only appealed the dismissal of Count I.

engaging in numerous acts of mail fraud in violation of 18 U.S.C. § 1341.[2] In particular plaintiffs allege that during each year since January 1, 1977, the defendant intentionally caused and directed the treasurer and/or the secretary-treasurer of the local to complete and mail a false and fraudulent report of the financial transactions of the local to AFSCME's international offices in Washington, D.C. In addition, plaintiffs claim that the defendant stole funds from the local by directing the treasurer to issue and mail numerous checks to his account on the pretense that he needed reimbursement for expenses lawfully incurred on behalf of the local.

Plaintiffs also allege that the defendant committed various acts of embezzlement, fraudulent conversion and obtainment by false pretenses of the local's funds, in violation of R.I.Gen.Law §§ 11–41–3, 11–41–4 (1981 Reenactment). Finally, they contend that the defendant unlawfully used funds from the local to make political contributions to the campaigns of certain Rhode Island officials and payments to various state officials and past and present officials of various labor organizations; caused the secretary-treasurer not to file a form with the Internal Revenue Service detailing payments to him in excess of $600.00 for tax years 1978 through 1984, inclusive; concealed from the membership material facts concerning the administration, operation, and financial transactions of the local; and deprived plaintiffs and others of information and records to which they had a right of access.

Plaintiffs sought, *inter alia*, to recover treble damages and reasonable attorney's fees pursuant to section 1964(c), the civil remedies provision of RICO.[3] Initially, they sought to maintain this suit as a class action, on behalf of "[a]ll persons who are now or at any time since 1977 have been members of or have paid representation or service fees in lieu of dues to Local 2883, [AFSCME]." Their motion for class certification was denied.

The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 17(a), which provides that "[e]very action shall be prosecuted in the name of the real party in interest." Finding that "any injury resulting from Campagnone's alleged activities [had] been directly sustained by Local 2883 and its members collectively" and only indirectly by the four individual plaintiffs, the court determined that none of the four had standing to seek redress under section 1964(c). Implicit in the court's assessment was a finding that the plaintiffs were not the real parties in interest.

We agree with the district court's conclusion, although we reject its reliance upon the terms "direct" and "indirect" for determining whether the parties had standing to assert a claim under section 1964(c). In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court directed that "RICO is to be read broadly." *Id.* at 497, 105 S.Ct. at 3286. It held that

> the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation. As the Seventh Circuit has stated, "[a] defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Haroco, Inc. v.*

---

2. Section 1962(c) provides:
   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
   Section 1961 defines "racketeering activity" to include "any act which is indictable" under 18 U.S.C. § 1341.

3. Section 1964(c) provides that
   [a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold damages he sustains and the cost of the suit, including a reasonable attorney's fee.

*American National Bank & Trust Co. of Chicago,* 747 F.2d 384, 398 (1984), aff'd, *post,* p. 606. But the statute requires no more than this. Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm caused by predicate acts.... Any recoverable damages occurring by reason of a violation of § 1962(c) will *flow from* the commission of the predicate acts.

*Id.* at 496–97, 105 S.Ct. at 3285–86 (footnote omitted) (emphasis added). In the footnote immediately following this passage, the Court made clear that damages could be recovered for those injuries indirectly caused by predicate acts, as well as those directly caused by them. *See id.* at 497 n. 15, 105 S.Ct. at 3286 n. 15. *Sedima,* then, establishes a broad standard for determining when a person is injured "by reason of" a section 1962 violation: the inquiry in not whether the plaintiff has alleged a direct or indirect injury, but rather whether he or she has alleged an injury that "flows from" the predicate acts. *See Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 29 (1st Cir.1987) ("Recovery under RICO ... is not limited to direct victims."); *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.,* 772 F.2d 467, 472 (8th Cir.1985) (Standing under section 1964(c) exists "even though the plaintiff only alleges that it suffered indirect injury."), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1460, 1461, 89 L.Ed.2d 718 (1986).

██ The plaintiffs' claim, however, fails. This is not because the plaintiffs allege an indirect injury, but because they allege an injury sustained by all of the members of the local collectively, rather than themselves individually.

In *Roeder,* the plaintiff was an investor who attempted to bring a RICO action on behalf of himself and other similarly situated shareholders against the corporation and its officers for failing to disclose that the corporation's president had paid a bribe to obtain certain subcontracts. We held that a "suit under RICO for injuries to the corporation ... [could] only be brought by the corporation itself or by a shareholder suing derivately on behalf of the corporation." *Roeder,* 814 F.2d at 29 (citations omitted). Conversely, a shareholder could only recover as an individual if the injury sustained to his or her stock were "peculiar to him [or her] alone, and [did] not fall alike upon other stockholders...." *Id.* at 30 (quoting 12B W. Fletcher, *Cyclopedia of the Law of Corporations,* § 5913, at 434 (rev. perm. ed. 1984)). Because the injury in *Roeder,* the decline in the stock price suffered once the bribe was disclosed, fell alike on all the shareholders, we held that the plaintiff could not maintain an action under RICO in his own right or on behalf of the limited class of shareholders that he sought to represent. 814 F.2d at 30.

Here, plaintiffs allege that the activities of the defendant "have resulted in direct financial damage to [p]laintiffs in that the funds of Local 2883 have been misapplied, and indirect financial damage occasioned by the consequential failure of said Local 2883 to effectively represent the interests of [p]laintiffs...." As to the first injury, the direct loss of funds, the plaintiffs specifically contend that the defendant misapplied more than fifty percent of all the dues paid to the local for his personal use or benefit. In their opposition to the defendant's motion to dismiss, the plaintiffs further assert that "increases in dues and service fees collected for Local 2883 use would have been unnecessary absent [the defendant's] conduct...." As to the second injury, the dimunition in effective bargaining, the plaintiffs allege in their opposition to the motion to dismiss that they suffered a "loss of salary and other compensation" and a "[l]oss of competitive advantage ... *vis a vis* other state employees...."

Viewing these allegations in the light most favorable to the plaintiffs, *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), we find that they all point to injuries sustained by the local union. In essence, the plaintiffs complain that they have suffered precisely the same financial harm that *all* of the local's members have suffered: the direct losses caused by the defendant's stealing from the local treasury; and the indirect losses caused by the defendant's ineffective rep-

resentation during collective bargaining. Thus, under *Roeder*, the plaintiffs' claim cannot be sustained because it alleges no injury *"peculiar* to [the plaintiffs] alone, [which] does not fall alike upon other [members of the local]...." 814 F.2d at 30 (emphasis added). In short, the local—and not the plaintiffs—is the real party in interest to this RICO action. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1552, at 689–90 (1971) (Union may be "the real party in interest for purposes of enforcing any right it has as an entity.") (footnote omitted); *see also Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2nd Cir.) (holding that the corporation, rather than certain of its shareholders, was the real party in interest in a RICO suit against defendants who allegedly harmed the corporation by engaging in various illegal activities), *cert. denied*, —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986).

We recognize, of course, that the plaintiffs could not have initiated a derivative suit on behalf of the union as the shareholders might have in *Roeder*. And we realize that it would have been fruitless to insist that the president, who ordinarily might sue on behalf of the local, initiate a RICO action in which he himself was to be named as a defendant. *Cf. Carter v. Berger*, 777 F.2d 1173, 1178 (7th Cir.1985) (Indirectly injured parties may sue under RICO when they can "show that the directly injured party was under the continuing control or influence of the defendant or his henchmen."). But the plaintiffs could have shown that they had the requisite support from the local to initiate an action on its behalf by obtaining class certification; had they been successful in this attempt, their complaint might have survived the motion for dismissal because it would have then alleged an injury common to the class of local members. We find it significant, however, that, in support of its argument opposing class certification, the defendant presented affidavits signed by approximately one-half of the membership of the local, in which the affiants attested to their belief in the defendant's innocence. Such strong opposition by those whom the action would assertedly benefit decisively undercuts the plaintiffs' claim for standing. We will not allow four plaintiffs to go forward under RICO on an allegation of injury to the members of a local union when a near majority of those comprising that local deny any injury.

One of the plaintiffs, Carl Simmons, did allege an additional injury peculiar to himself when he attested in an affidavit that he failed to obtain a particular nursing position at an institution whose proximity to his home would have dramatically reduced his commuting costs. Although the failure to obtain this position might have harmed the plaintiff financially, the link between the predicate acts of mail fraud and his injury in the form of commuting costs is too attenuated for us to conclude that the injury *flowed from* the mail fraud violations. *See Sedima*, 473 U.S. at 497, 105 S.Ct. at 3286. It would be stretching the causal connection too far to allow this particular plaintiff, whom the defendant was not obligated to bargain for individually, to gain standing simply by asserting that he suffered "by reason of" the defendant's predicate acts. *See Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1205 (1st Cir.1987).

The judgment below is *affirmed*.