Stu ADAMS-LUNDY, et al.,
Plaintiffs-Appellants,

v.

The ASSOCIATION OF PROFESSION-AL FLIGHT ATTENDANTS, et al.,
Defendants-Appellees.

No. 86-1911.

United States Court of Appeals,
Fifth Circuit.

May 10, 1988.

---

JoAnn Peters, Dallas, Tex., for plaintiffs-appellants.

Eric D. Ryan, Alan L. Busch, Dallas, Tex., for Paluk, et al.

Edward B. Cloutman, III, Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for Donovan.

Phyllis Conrad, pro se.

Kathy Knoop, pro se.

Before WILLIAMS and HIGGINBOTHAM, Circuit Judges, and BUCHMEYER,[*] District Judge.

PER CURIAM:

The appellants, members of the Association of Professional Flight Attendants, appeal the district court's dismissal of their claims against fellow APFA members under the Labor Management Reporting Disclosure Act and Racketeer Influenced and Corrupt Organizations Act. The district court dismissed the LMRDA claim because appellants had not requested the union to act, a condition precedent to filing suit; the court dismissed the RICO claim for lack of standing. We affirm in part and reverse in part.

I

These parties have been before us twice,[1] so we only briefly recount the factual and

---

[*] District Judge of the Northern District of Texas, sitting by designation.

1. *Adams–Lundy v. Association of Professional Flight Attendants,* 731 F.2d 1154 (5th Cir.1984) (*Adams–Lundy I*); *Adams–Lundy v. Association*

procedural history of this struggle between two factions for control of the Association of Professional Flight Attendants, a labor union representing American Airlines flight attendants. After several years, the struggle intensified at an APFA governing board meeting on March 3, 1984, when a minority faction that controlled nine seats on the board, including the presidency, filed charges accusing the eleven-member majority of disloyalty. The minority faction introduced a resolution to remove the charged officers from the positions they held. Because union rules did not permit charged persons to vote on the resolution "nine members of the board thereby suspended eleven of their brethren." [2]

Stu Adams–Lundy and sixteen other APFA members, a group that included the suspended members, filed suit under the Labor Management Reporting and Disclosure Act [3] against APFA and union members, including those who had voted them out of office. This court vacated the district court's grant of a preliminary injunction because the plaintiffs had not established a likelihood of success on the merits.[4] We remanded to the district court and reminded the parties that the APFA constitution provided a procedure for dealing with officers accused of impropriety. This procedure included an ultimate appeal to a neutral arbitrator.

The parties heeded our suggestion and brought the matter to a neutral arbitrator, who issued a decision in February, 1985, in favor of the Adams–Lundy plaintiffs. The parties immediately headed back to the district court, which ordered enforcement of the arbitration award in its entirety. A panel of our court again vacated the district court's orders, concluding that the district court lacked jurisdiction to enforce an arbitration award based solely on an internal union constitution.[5]

Plaintiffs meanwhile had filed their Second Amended Complaint, alleging claims under various sections of the LMRDA, including § 501, which addresses the fiduciary duties of union officers, RICO, the Railway Labor Act, and pendent state claims. After *Adams–Lundy II*, plaintiffs voluntarily dismissed all claims except those under § 501 and RICO and all claims against APFA. The union later moved to realign itself as a party plaintiff but the district court denied this motion because APFA was not then a party.

On November 18, 1986, the district court dismissed with prejudice all remaining claims, concluding that plaintiffs had failed to meet the conditions of § 501. The court also dismissed the RICO claims because plaintiffs were seeking to redress injuries to the union, not themselves; RICO would not support derivative actions and thus plaintiffs lacked standing to bring a RICO action.

Adams–Lundy appeals the dismissal of the § 501 and RICO claims and the denial of APFA's motion to realign. Appellees argue that this appeal is frivolous and request sanctions. We affirm the district court's decision in part and reverse it in part, and decline to impose sanctions.

## II

We first turn to appellees' contention that the law of the case precludes us from entertaining Adams–Lundy's § 501 claims. Specifically, appellees argue that the panel in *Adams–Lundy II* already has decided that Adams–Lundy has no cognizable § 501 claim.

█ As we noted in *Adams–Lundy II*, the law of the case doctrine dictates that the holdings of a previous panel in the case "must be followed in all subsequent proceedings in the same case, both in the trial court and/or on a later appeal in the appel-

*of Professional Flight Attendants,* 792 F.2d 1368 (5th Cir.1986) (*Adams–Lundy II*).

**2.** *Adams–Lundy I,* 731 F.2d at 1156.

**3.** 29 U.S.C. § 401 *et seq.*

**4.** *See Adams–Lundy I,* 731 F.2d at 1159.

**5.** *See Adams–Lundy II,* 792 F.2d at 1373.

248

late court." [6] The doctrine, however, does not "bar us from considering any issue that was not resolved in the earlier appellate proceeding." [7]

■ No panel has decided the § 501 issue. In *Adams–Lundy I* the court decided that plaintiffs did not state claims under section 102 of the LMRDA.[8] The *Adams–Lundy II* court held that it did not have jurisdiction to enforce an arbitration award solely based on an internal union constitution.[9] It is true that the *Adams–Lundy II* panel recognized that the suit was brought under LMRDA sections that included § 501 and stated "that this case has been in litigation for a considerable period of time, and from each appearance in our court, appears to have little reason to be in the federal courts." [10] This statement, however, was not a decision on the merits of the § 501 claim and the law of the case does not prevent us from deciding the issue, to which we now turn.

### III

Section 501(a) of the LMRDA requires union officers "to hold [the union's] money and property solely for the benefit of the [union]." [11] In his Second Amended Complaint Adams–Lundy alleges that appellees violated their § 501 duties by financing their defense with union funds, by failing to expend money in accordance with the

union constitution, and by spending union money without the authorization of the governing board.

A union member may sue for violations of § 501(a) only after meeting the requirements established in § 501(b). First, the union member must request the union, its governing board, or its officers "to sue or recover damages or secure an accounting or other appropriate relief." [12] Second, the board must refuse to take action within a reasonable time after being requested to do so.[13] The district court found that Adams–Lundy plead neither that he actually had requested that APFA act against the alleged breach of fiduciary duty nor that the union failed to or refused to act after such a request. We disagree and conclude that Adams–Lundy has fulfilled sufficiently the requirements of § 501(b).

■ Although the circuits disagree about what constitutes a sufficient § 501(b) request, we decide that § 501(b) requires a plaintiff to request the union to institute legal proceedings.[14] First, the statute on its face contemplates some form of legal action. Although § 501(b) reads "to sue *or* recover damages or secure an accounting or other appropriate relief," courts have construed the "or" to mean "to," based on the statute's legislative history.[15] The

6. *Adams–Lundy II,* 792 F.2d at 1372 (citing *Williams v. City of New Orleans,* 763 F.2d 667, 669 (5th Cir.1985)).

7. *Adams–Lundy II,* 792 F.2d at 1372 (citing *Chapman v. National Aeronautics and Space Adm.,* 736 F.2d 238, 241 (5th Cir.), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984)).

8. *See Adams–Lundy I,* 731 F.2d at 1159.

9. *See Adams–Lundy II,* 792 F.2d at 1373.

10. *Id.*

11. 29 U.S.C. § 501(a); *see also Ray v. Young,* 753 F.2d 386, 389 (5th Cir.1985) ("Section 501 was adopted primarily to address the problem of corrupt management of funds by union officials.").

12. 29 U.S.C. § 501(b).

13. *Id.* Section 501(b) also states that "[n]o such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown...." 29 U.S.C. § 501(b). Adams–Lundy met the good cause requirement by requesting and obtaining leave of the district court to file the § 501 action.

14. *See Dinko v. Wall,* 531 F.2d 68, 73 (2d Cir. 1976) (construing the request to "secure an accounting" in § 501(b) as requiring a demand for an accounting in a legal proceeding); *Persico v. Daley,* 239 F.Supp. 629, 630 (S.D.N.Y.1965) ("[W]hat Congress intended must have been to require a request that the union sue, such suit to be brought either to recover damages or for an accounting or for other appropriate relief."); *Penuelas v. Moreno,* 198 F.Supp. 441, 443–44 (S.D.Cal.1961) (concluding "that Section 501(b) refers to a demand for court action").

15. *See Dinko,* 531 F.2d at 72 n. 4; *Cassidy v. Horan,* 405 F.2d 230, 232–33 (2d Cir.1968).

House and Senate reports both refer to the language in § 501(b) as *"to* recover."[16] "It would seem that the confusing word 'or' must be a misprint in the statute which has heretofore escaped detection."[17] Read as "to," the statute requires a plaintiff to request that the union begin legal proceedings. Second, § 501(b) must be strictly construed because it extends the jurisdiction of federal courts.[18] Third, one purpose of § 501(b) is "to protect union officials from unjust harassment"[19] and declining to soften its requirements accomplishes that purpose.

■ The Second Amended Complaint does not explicitly allege that appellants requested the union to take legal action to correct breaches of fiduciary duties, but paragraph 80[20] and paragraph 83,[21] both imply some form of request was made, as does paragraph 84.[22] As other courts have found, these requests sufficiently meet § 501(b)'s requirement of a request for legal action.[23] We agree with the Second Circuit that in determining whether a request for legal action was made, we must keep in mind that "the Act is designed to protect union members" and that an inter-

**16.** S.Rep. No. 187, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Admin.News 2318, 2359; H.R.Rep. No. 741, 86th Cong., 1st Sess., *reprinted in* 1959 U.S.Code Cong. & Admin. News 2424, 2467.

**17.** *Persico,* 239 F.Supp. at 630.

**18.** *See Flaherty v. Warehousemen, Garage & Service Station Employees Local Union No. 334,* 574 F.2d 484, 487 (9th Cir.1978); *see also Boelens v. Redman Homes, Inc.,* 748 F.2d 1058, 1067 (5th Cir.1984) (stating that "statutes conferring jurisdiction on federal courts are to be strictly construed").

**19.** *Dinko,* 531 F.2d at 73.

**20.** 80. The fiduciary duty of the individual Defendants to the APFA membership and toward the captive Defendant APFA was breached by their (1) failure to operate the union according to the terms of the APFA Constitution, (2) failure to exercise the power of their respective offices and positions in accordance with past practice and within and limited by the Constitution's terms and specific provisions, (3) suspension of the constitution including suspension of internal remedies, making exhaustion futile, and/or untimely, (4) refusing to return APFA to its constitutional government, (5) causing APFA to breach its duty of fair representation, (6) causing APFA to violate the LMRDA election laws, (7) advancing the candidacy of their political group by improper means and with union funds, and (8) wrongfully expending funds of the union for all of these and other activities.

**21.** 83. Defendants damaged the APFA by intentionally misrepresenting themselves as the APFA entity after dismantling the constitutional governing body of the APFA, maintaining APFA without its government and destroyed the democratic structure of APFA, rendered internal remedies and exhaustion under the Constitution unavailable, and failed and refused to disavow or cease their actions or to correct or act to correct

or minimize the harm and damage done to the APFA.

**22.** 84. Prior to an expensive arbitration, Plaintiffs KROLL, HAGERTY, GIBBS and other Plaintiffs attempted to convince the Defendants including PALUK and DONOVAN to restore constitutional rule to APFA, to re-establish the governing Board of Directors they had dismantled, but Plaintiffs were not successful. After the Morris arbitration, where the remedy of restoration of the government was ordered, Defendants DONOVAN, HICKS and others acted to maintain the APFA without its governing body, and acted in violation of § 501 by:

(1) Failure to implement the majority vote of the March 3, 1984, Board meeting and failure to recognize the March 27–31, 1984 Board meeting and thereby violating the constitutional mandate for a Board meeting each quarter;

(2) Action to thwart the exercise of member rights under Article XIV of the APFA Constitution.

(3) Failure to account to the membership through their respective representatives for the money and property of the union;

(4) Failure to grant the charged Plaintiffs, constitutional procedural due process;

(5) Taking unauthorized appeals and other legal actions in the name of APFA which were intended to, and which did, maintain the government of APFA in a dismantled state for over a year;

(6) Failure and refusal to allow base chairperson Plaintiffs to perform the duties of their offices, to maintain their status and represent their constituent members at the quarterly Board meetings from March 3, 1984 to April 1985;

(7) Financing, agreeing to finance, and attempting to finance with union funds the defense of the individual defendants herein.

**23.** *See, e.g., Sabolsky v. Budzanoski,* 457 F.2d 1245, 1252 (3d Cir.) (finding a letter requesting internal relief sufficient), *cert. denied,* 409 U.S. 853, 93 S.Ct. 65, 34 L.Ed.2d 96 (1972).

pretation of § 501(b) requires a balancing of policies.[24] These paragraphs also sufficiently demonstrate that the appellants requested action to cure alleged fiduciary duty violations.[25] Finally, the complaints allege that the APFA refused to correct the violations. Thus, we are persuaded that appellants met the conditions precedent of § 501(b).[26] Accordingly, we reverse this portion of the district court's decision.

## IV

Adams–Lundy also alleged violations of the Racketeer Influenced and Corrupt Organizations Act.[27] We assume without deciding that the district court was correct in analogizing Adams–Lundy's claim to shareholder derivative suits.

■■■ Of course, stockholders cannot sue in their own name for diminution in the value of their stock; a decrease in stock value does not provide sufficient direct injury for the stockholder to sue in his own right.[28] This circuit, as well as other circuits, have declined to allow stockholders to bring individual claims under RICO for diminution in the value of the corporation.[29] A RICO action to recover for injury to the corporation "is a corporate asset, and shareholders cannot bring it in their own names without impairing the rights of prior claimants to such assets."[30] In a RICO case "an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief."[31]

■ In their discussion of the RICO claims, appellants have attempted to locate a direct injury, without success. Any financial improprieties occurred with union funds and directly injured solely the union; appellants suffered only indirect injuries as union members.[32] Appellants thus have no standing under RICO and such claims properly were dismissed.

## V

We turn briefly to two other issues before us. First, we reject Adams–Lundy's contention that the district court erred in refusing to realign APFA as a party plaintiff. Adams–Lundy moved to dismiss APFA as a defendant on August 18, 1986. APFA moved to realign itself as a party plaintiff on October 23, 1986. The district court denied the motion, stating that its September 18, 1986, order dismissed APFA

**24.** *Dinko,* 531 F.2d at 73.

**25.** We need not decide the breadth of § 501 fiduciary duties, as two panels twice before also have refused to determine. *See Ray,* 753 F.2d at 390 n. 2; *Vincent v. International Brotherhood of Electrical Workers,* 622 F.2d 140, 143 (5th Cir.1980).

**26.** We thus do not reach Adams–Lundy's contention that he is excused from § 501(b)'s requirements because it would have been futile to request the union to correct financial improprieties. Some courts indeed have stated that a § 501(b) request need not be made if the request would have been futile. *See, e.g., McNamara v. Johnston,* 522 F.2d 1157, 1163 (7th Cir. 1975) ("[I]t is apparent that a demand for relief would have been futile ... [and] plaintiffs' failure to make such a request is excused."), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1976); *Sabolsky,* 457 F.2d at 1253 ("[S]trict use of any exhaustion requirement would not be warranted ... [because] a request to sue would have been an exercise in futility."). Other courts have rejected the futility doctrine. *See Flaherty,* 574 F.2d at 487; *Dinko,* 531 F.2d at 72; *Cassidy,* 405 F.2d at 232. This circuit has not addressed the issue.

**27.** 18 U.S.C. § 1961 *et seq.*

**28.** *See Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir.1981).

**29.** *See Crocker v. FDIC,* 826 F.2d 347, 349 (5th Cir.1987); *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 29–30 (1st Cir.1987); *Gaff v. FDIC,* 814 F.2d 311, 317 (6th Cir.1987); *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers Nat'l Bank,* 759 F.2d 542, 544 (6th Cir.1985).

**30.** *Rand,* 794 F.2d at 849.

**31.** *Id.*

**32.** Appellants argue that RICO does not require direct injury and cite the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). *Sedima* rejected the idea that recovery of damages under RICO required proof of a special RICO injury, such as antitrust injury under the Clayton Act.

from the suit. A review of the order reveals, however, that the court did not dismiss APFA on that date, although it did dismiss other claims in the order. Nevertheless, party alignment is within the district court's discretion and we find no abuse of that discretion here.

Finally, we reject appellees' request to impose sanctions for a frivolous appeal under Fed.R.App.P. 38.[33] "An appeal is frivolous when it involves legal points that are not arguable on their merits."[34] Because we agree that appellants have met § 501(b)'s requirements, their appeal is not frivolous.

AFFIRMED in part and REVERSED in part.

---

**33.** Rule 38. Damages for Delay.
   If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

Fed.R.App.P. 38.

**34.** *Sturgeon v. Airborne Freight Corp.,* 778 F.2d 1154, 1161 (5th Cir.1985).