**NATIONAL ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**MELLON FINANCIAL SERVICES CORP. NUMBER 7, R. Allen Forbes and Aetna Casualty & Surety, Defendants-Appellees.**

No. 87–3310.

United States Court of Appeals,
Fifth Circuit.

June 17, 1988.

Richard L. Weil, Guste, Barnett & Shushan, New Orleans, La., for plaintiff-appellant.

Henry W. Kinney, III, Kinney & Marshall, New Orleans, La., for R. Allen Forbes.

Donald A. Meyer, Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, La., for Mellon.

Before WISDOM, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

National Enterprises, Inc. sold building materials to a construction company, G & N Enterprises, which later filed a petition in bankruptcy without paying for the supplies. National brought this RICO action against G & N's primary lender, Mellon Financial Services Corporation Number 7, and its loan officer, R. Allen Forbes. The RICO theory argued is that Forbes, in requiring kickbacks as a condition of loans to G & N, injured National when he defrauded G & N of those sums of money that would have allowed payment to creditors. The district court dismissed this case under Federal Rule of Civil Procedure 12(b)(6). On appeal, we hold that National's injury is not cognizable under RICO, and consequently deny standing to maintain this action.

I

For the purposes of reviewing the Fed.R. Civ.P. 12(b)(6) dismissal, the plaintiff's factual representations are taken as true. In 1982, G & N Enterprises began operating in New Orleans, Louisiana, as a real estate development company. G & N approached R. Allen Forbes, a loan officer with Mellon, to obtain financing for G & N's various construction projects. Soon after, G & N began paying Forbes frequent kickbacks to ensure continued financing from Mellon. Early in 1985, G & N placed a large order with National for prefabricated housing materials. National contacted Forbes to ascertain whether G & N could pay for these supplies and was told that Mellon was financing the G & N projects and that G & N would be able to pay for the delivered materials. After the supplies were delivered, G & N filed a bankruptcy petition. National was not able to obtain payment and therefore brought suit in federal district court against Mellon, Forbes and Mellon's insurer, Aetna, alleging state law and RICO violations.[1] The complaint was dismissed by the trial court for failure to state a claim upon which relief could be granted. National appeals only the dismissal of its RICO claim.

---

1. In a separate suit, the bankruptcy trustee for G & N has also filed a RICO action against Mellon and Forbes.

## II

### A.

Although Forbes and Mellon dispute whether any element of a RICO action has been demonstrated in the complaint, we address only whether National's alleged injury is sufficient for standing purposes.

National contends that its standing lies under the broad language of 18 U.S.C. § 1964(c), which provides a civil remedy to "[a]ny person injured in his business or property by reason of [a RICO violation]." [2] National argues that it was directly injured by the RICO violations because Mellon advised National by letter that G & N was financed on the project for which National provided supplies while at the same time Mellon was engaging in a kickback scheme that depleted G & N's funds. National contends that it relied upon these direct representations to extend credit to G & N and consequently suffered a direct injury, apparently from these misrepresentations, when G & N could not pay its creditors.

Mellon responds that National is nothing more than a creditor that has been injured indirectly. Mellon certainly never agreed to pay National, it argues, and never represented that it would underwrite G & N's debts; it only told National that Mellon financed G & N's activities. Thus, National's only injury, Mellon contends, resulted from G & N's failure to pay. Mellon contends that if this court were to allow a creditor to maintain a suit for alleged RICO violations suffered by its debtor, the federal courts would be subjected to a vast increase in RICO actions, and, in addition, the automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362, would be seriously impaired.

### B.

Whether an indirect injury is sufficient to constitute standing in a RICO action is a contested question among the federal courts. Several courts have held that only a direct injury arising from RICO "predicate acts" constitutes standing. *See, e.g., Rand v. Anaconda-Ericsson, Inc.,* 794 F.2d 843, 849 (2d Cir.1986) (shareholders lacked standing to maintain RICO action for injuries incurred by corporation); *Carter v. Berger,* 777 F.2d 1173, 1176–78 (7th Cir.1985) (taxpayers were only indirectly injured by fraud perpetrated upon the county by some property owners and, since the injury was suffered by the county, the taxpayers lacked standing under RICO to sue the property owners); *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542, 544 (6th Cir.1985) (shareholder and creditor of corporation had no standing to bring RICO action for corporate injuries); *Ocean Energy II, Inc. and Coteau Services, Inc. v. Alexander and Alexander, Inc. and Alexsis, Inc.,* No. 86–5296 (E.D. La. Feb. 10, 1988) [available on WEST-LAW, 1988 WL 10171] (insured plaintiffs denied standing because they suffered only indirect injury where action filed against insurance agent for causing insurance company to go bankrupt).[3] Still other circuits have held "that standing to pursue a RICO action exists even though the plaintiff does not allege that it was a target of the racketeering activity and even though the plaintiff only alleges that it suffered indirect injury." *Terre du Lac Ass'n, Inc. v. Terre*

---

**2.** A RICO violation "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The statute also lists various federal and state crimes that constitute predicate acts. 18 U.S.C. § 1961. These predicate acts in turn establish the pattern of racketeering activity. *Sedima,* 105 S.Ct. at 3285.

**3.** A somewhat different analysis has been employed by the First Circuit in *Bass v. Campagnone,* 838 F.2d 10 (1st Cir.1988). In *Bass,* the court addressed the issue of whether individual plaintiffs could maintain a RICO suit for injuries sustained by a local labor union. 838 F.2d at 12. In denying standing to the individual union members, the First Circuit stated that "*Sedima,* then, establishes a broad standard for determining when a person is injured 'by reason of' a § 1962 violation: the inquiry in [sic] not whether the plaintiff has alleged a direct or indirect injury but rather whether he or she has alleged an injury that 'flows from the predicate acts.'" *Id.* at 12. Thus, the court ruled that the local union was "the real party in interest to this RICO action." *Id.* at 13.

*du Lac, Inc.*, 772 F.2d 467, 472 (8th Cir. 1985).

Certainly in the broad sense, our court has already decided the issue presented today. In *Adams-Lundy v. Ass'n of Professional Flight Attendants*, 844 F.2d 245 (5th Cir.1988), we denied standing under RICO to individual union members who attempted to sue those who allegedly had committed RICO injuries against their union. We noted that the alleged predicate acts occurred with union funds and directly injured only the union. Thus, because the plaintiffs suffered only indirect injuries as union members, we held they had no standing under RICO. Citing the Second Circuit case, *Rand v. Anaconda-Ericisson, Inc.*, 794 F.2d 843, 849 (2d Cir.1986), we joined the Second and Seventh Circuits in saying, "In a RICO case 'an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer for relief.'" *Adams-Lundy* at 250.

It is true that *Rand* and several other cases that have denied standing under RICO to assert indirect injuries were significantly based on the principle associated with derivative lawsuits, that individual stockholders do not have standing to assert injuries suffered by the corporation. Indeed, our decision in *Adams-Lundy* analogized the lack of standing of union members, suing for injuries done to the union, to stockholders, attempting to sue for injuries done to a corporation. *Rand*, 794 F.2d at 849. It thus might be argued that since the case before us today does not even tangentially involve that principle, National's standing should not be decided under the authority of those cases, including *Adams-Lundy.*

Even though we accept and apply *Adams-Lundy* as precedent in our circuit for denying standing to the creditor of an alleged RICO victim, we also think that standing to National is denied under an appropriate reading of the Supreme Court's ruling in *Sedima v. Imrex*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), in which the Court stated that:

the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the *conduct constituting the violation....*

.... Where the plaintiff alleges each element of the violation, the compensable injury necessarily is the harm *caused by the predicate acts* sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise. Those acts are, when committed in the circumstances delineated in § 1962(c), "an activity which RICO was designed to deter." Any recoverable damages occurring by reason of a violation of section 1962(c) *will flow* from the commission of the predicate acts.

*Id.* 105 S.Ct. at 3285–86 (footnote omitted).

First it is clear to us that National was not injured by the "conduct constituting the violation," nor was the harm it suffered "caused by the predicate acts." It might be argued, if the principle of causation allowed boundless speculation, that the bribery in this case caused depleted funds that caused the bankruptcy of G & N, and that this bankruptcy caused nonpayment to creditors, including National; thus, the argument would conclude, nonpayment to National "flowed" from the commission of the predicate act of bribery. It seems to us, however, that any sensible interpretation of *Sedima*, or indeed any sensible application of the general principles of causation, absolutely precludes such speculative arguments or theories. Such a tenuous argument is far beyond the pale of rational causation. We think the only sound perspective is to view National's injury of nonpayment as flowing from the legitimate contractual relationship it had as supplier to G & N, not from the remote corrupt acts of a virtual stranger to that contract and to that relationship. We therefore hold that because National lacks a cognizable injury resulting from the RICO conduct, it lacks standing to bring this suit against Forbes and Mellon and affirm the district court's dismissal of the complaint.

Finally, we acknowledge that whether a given party has suffered a RICO injury is a fact-heavy question. To be sure, today we

will not say that the creditor of a RICO victim can *never* have standing under RICO; we will say, "Well, hardly ever." We suppose that such standing is imaginable, given some highly unusual set of facts, but in the usual case, such as we have here today, a creditor of a RICO victim lacks standing to sue the RICO perpetrator; National surely does. The district court is therefore

AFFIRMED.