Brenda WOOTEN, Plaintiff,

v.

Leonard E. LOSHBOUGH, Jr., et al., Defendants.

No. S86–276.

United States District Court,
N.D. Indiana,
South Bend Division.

April 20, 1990.

William E. Winingham, Indianapolis, Ind., John C. Firth, South Bend, Ind., for plaintiff.

James H. Pankow, South Bend, Ind., for James and Beth Loshbough and David Gawthrop.

E. Spencer Walton, Jr., South Bend, Ind., for McGladrey, Hendrickson & Pullen.

MEMORANDUM AND ORDER

MILLER, District Judge.

On November 26, 1986, this court denied the motions of four defendants to dismiss plaintiff Brenda Wooten's complaint for failure to state a claim upon which relief can be granted. *Wooten v. Loshbough*, 649 F.Supp. 531 (N.D.Ind.1986). Bankruptcy proceedings involving several defendants have slowed the progress of the liti-

gation, and the intervening months have seen the development of case law that leads the court to conclude its earlier opinion no longer reflects existing law. Accordingly, the court will grant defendants James and Beth Loshbough's motion to reconsider.

Ms. Wooten brought this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* She alleges that the defendants caused the funds and assets of Federal Press Company to be misused and misapplied, ultimately leaving Federal Press unable to pay the $850,000 judgment she obtained for the loss of her fingers in a Federal Press machine. In 1986, the defendants argued that the claim should be dismissed as one for personal injuries rather than for injury to business or property as required by RICO's civil enforcement provision. 18 U.S.C. § 1964(c). The court distinguished Ms. Wooten's personal injury from the injury caused by an inability to enforce the judgment she secured in her lawsuit, and held that the latter injury stated a claim under RICO's civil provisions.

In 1986, the court also rejected a secondary argument that the victim of the defendants' alleged racketeering activity was Federal Press, rather than Ms. Wooten. The court questioned whether the Sixth Circuit's holding in *Warren v. Manufacturers Nat'l Bank,* 759 F.2d 542 (6th Cir. 1985), survived the Supreme Court's decision in *Sedima, SPRL v. Imrex Co.,* 473 U.S. 479, 496–97, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), and the court cited *Crocker v. McMullan,* 623 F.Supp. 963 (S.D.Miss.1985), for the proposition that Ms. Wooten's injury was personal, not derivative. Since the 1986 ruling, however, the Seventh Circuit cited *Warren* with approval for the proposition that a shareholder may not sue under RICO for a diminution in the value of his shares, *Flynn v. Merrick,* 881 F.2d 446, 450 (7th Cir.1989), and the Fifth Circuit has reversed *Crocker.* 826 F.2d 347 (5th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988). Obviously, the legal support for the 1986 holding has eroded, and that holding must be reconsidered. That reconsider-

ation discloses that today's law favors the defendants' argument.

In *National Enterprises v. Mellon Financial Services,* 847 F.2d 251 (5th Cir. 1988), a Mellon loan officer took kickbacks to afford loans to a corporation to which National sold products. Upon inquiry, Mellon advised National that the corporation was able to pay for the products, but instead the corporation went bankrupt. National contended that absent the kickbacks, those diverted funds would have been available to pay National's bill. The court held that National, as the creditor of a RICO victim, lacked standing to sue because it lacked a cognizable injury resulting from RICO conduct. 847 F.2d at 254.

The defendants also rely upon *Carter v. Berger,* 777 F.2d 1173 (7th Cir.1985), in which plaintiff taxpayers sought a private remedy from the defendant, who had bribed county officers to secure reduced tax assessments against his clients, claiming they suffered the requisite damage from the bribes because they had to pay the increased taxes that resulted as to them and others. The court held that the taxpayers had no standing since their damage derived from the injury to the county in tax losses from the RICO activity.

The thrust of the Loshboughs' argument appears to be that Ms. Wooten lacks standing because she suffered only an indirect injury at the defendants' hands, an injury too remote to be considered proximately caused by the alleged RICO violations. The defendants claim that Ms. Wooten's causation arguments are the same as those of a bankrupt's unpaid supplier, or of a corporate shareholder who claims loss of stock value from RICO violations. In essence, the defendants claim that Ms. Wooten's injury flows from injury to the corporation itself, and that injuries inflicted directly against the corporation should not be assertable by the victim's creditors.

Decisions from within this circuit support the defendants' position, particularly in the context of bankruptcy proceedings. In *Dana Molded Products, Inc. v. Brodner,* 58 B.R. 576 (N.D.Ill.1986), a judgment cred-

itor of bankrupt American Wheel and Engineering Co. brought a RICO action against the officers of American Wheel alleging a fraudulent conveyance of the corporation's assets during the pendency of the bankruptcy proceeding. The court held that the corporation's creditors lacked standing to assert a RICO claim based on injuries inflicted directly against the corporation.

In *Estes v. Dinzole*, No. 85–C–8648, slip op., 1989 WL 68392 (N.D.Ill. June 13, 1989) (1989 U.S.Dist. LEXIS 7697), the plaintiffs claimed injuries as a result of the defendants' scheme to convert cattle sales proceeds and to divert corporate assets. The court reasoned that the plaintiffs lacked standing on their own behalf to bring a RICO action for alleged fraudulent depletion of corporate assets, but that they had standing to pursue their claim based on the misappropriation of their cattle and sales proceeds. The court found that the misappropriation of the cattle proceeds constituted a direct injury to the plaintiffs themselves, while the depletion of corporate assets was a direct injury to the corporation and only an indirect injury to the plaintiffs and the corporation's other creditors. Thus, the trustee in bankruptcy was the proper party to bring a RICO claim based on depletion of corporate assets.

In *Barnett v. Stern*, 93 B.R. 962 (N.D.Ill. 1988), judgment creditors brought actions against a bankruptcy debtor and his son alleging violations of RICO and Illinois securities law through a fraudulent scheme to conceal assets of trusts from creditors. The court held that the creditors had no standing to pursue on their own behalf their RICO claims; rather, the bankruptcy trustee should have brought such claims on behalf of all creditors of the estate. The court noted however, that the trustee need not assert every RICO or fraud claim asserted by a creditor following bankruptcy. If the claim arose out of wrongdoing to a single creditor or group of creditors, that creditor or creditors would have to pursue the claim on their own. *Barnett v. Stern*, 93 B.R. at 972 n. 4.

An example of a direct injury against creditors occurred in *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271 (7th Cir.1989). The plaintiffs, four oil suppliers, alleged that the defendants in league with their firm's accountant, orchestrated two episodes of fraud, executed through a petroleum corporation owned by them. The alleged scheme was to expand the defendants' company assets at the expense of the plaintiffs, and then to funnel those assets or their proceeds to themselves through intermediary companies also owned or controlled by them. The court held that the plaintiffs' injury from such conduct was direct and substantial. *Id.* at 1279.

> Although a part of the underlying scheme was the diversion of corporate assets (for which the trustee may well have a cause of action against the Arnetts) an essential part of the scheme, on which its success depended, was the fraudulent taking from the plaintiffs of exceptionally large quantities of fuel. We conclude that the facts show an injury to the plaintiffs significantly different from the injuries to creditors in general resulting from the diversion of corporate assets.

*Id.* at 1280.

The Second Circuit took a different approach to the standing problem in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2nd Cir.1988). Bankers Trust, the largest creditor of a bankrupt corporation, alleged that the defendants' conduct (including bribery, perjury, fraud, and bankruptcy fraud) caused it monetary damage, and that the right to recover for that injury belonged not to the corporation or its bankrupt estate, but to Bankers Trust. The court held that even if a bankrupt corporation and a creditor have suffered an identical injury, the creditor has standing to bring his RICO claim.

One principle that can be drawn from all of these cases is that in order for a judgment creditor to have standing to pursue her RICO claims, she must allege a direct injury caused by reason of the alleged racketeering in violation of 18 U.S.C. § 1962. *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809 (7th Cir.1987) ("[W]e believe a plaintiff must prove only:

(1) a violation of section 1962 (for example, a person furthering an enterprise through a pattern of racketeering activity), and (2) an injury directly resulting from some or all of the activities comprising the violation."); *see also Sperber v. Boesky,* 849 F.2d 60, 64 (2d Cir.1988). Taking the pertinent allegations of Ms. Wooten's complaint as true for purposes of the motion to dismiss, the court is of the opinion that Ms. Wooten's inability to collect her judgment is derivative of the loss Federal Press suffered when the defendants misappropriated its assets. The defendants stripped Federal Press of the ability to survive a judgment, and thus prevented Ms. Wooten from collecting her judgment. The defendants plundered Federal Press, not Ms. Wooten. Read even in its most favorable light, the complaint portrays Ms. Wooten's inability to enforce her judgment as an indirect result of activity directed against Federal Press.

Although this case is distinguishable from those in which courts have held shareholders lack standing to bring a nonderivative suit for diminution in the value of their stock, *Flynn v. Merrick,* 881 F.2d 446 (7th Cir.1989); *Rand v. Anaconda–Ericsson, Inc.,* 794 F.2d 843 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 29 (1st Cir.1987) (shareholder lacked standing to bring RICO action based on the payment of a bribe that injured corporation), it is significant that the Seventh Circuit has taken the position that in RICO cases "an indirectly injured party should look to the recovery of the directly injured party, not to the wrongdoer, for relief." *Carter v. Berger,* 777 F.2d 1173, 1176 (7th Cir.1985).

The defendants argue that there is an insufficient causal connection between Ms. Wooten's injury and the alleged acts of racketeering activity. Causation is a requirement of standing. *Sedima, SPRL v. Imrex Co.,* 473 U.S. at 496–97, 105 S.Ct. at 3285 (under § 1962(c), a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct consti-

tuting the violation."); *see also Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d at 809. Cases decided since this court's earlier ruling indicate that an extremely attenuated causal connection will not survive a standing attack. For example, in *Brandenburg v. Seidel,* 859 F.2d 1179 (4th Cir.1988) the plaintiffs were depositors who had suffered losses from a "run" on the defendant bank. The court held they lacked standing to bring their action because the alleged predicate acts of racketeering (misrepresentations which induced them to deposit their money) were as a matter of law "not so significant and important a cause of the plaintiffs' loss of income on their deposits and accounts that these defendants should be held responsible for them." *Brandenburg,* 859 F.2d at 1189.

Ms. Wooten has alleged that the defendants ran the corporation as their personal vehicle for fraudulent and even criminal activity. The alleged racketeering activity, described as diversion of funds for personal purposes and the fraudulent filing and preparation of tax returns, was all directed against the corporation. Ms. Wooten has alleged no facts that would support an inference that her injury resulted directly from some or all of the activities comprising the violation.

Based on the foregoing, the court finds the position urged by the defendants for reconsideration of the court's earlier ruling to be well taken. The court now GRANTS the motion of defendants James and Beth Loshbough to reconsider, and GRANTS the motion of those defendants to dismiss the plaintiff's claims with respect to them for lack of standing.

SO ORDERED.