**John R. ROGERS, et al., Plaintiffs,**

**v.**

**Sigurd LUCASSEN, et al., Defendants.**

**Civ. A. No. 91–2689 (CRR).**

United States District Court, District of Columbia.

Nov. 20, 1991.

James S. Ray and Laurence E. Gold, of Connerton, Ray & Simon, Washington, D.C., for plaintiffs.

Stephen M. Ryan, with whom on brief, were Stanley M. Brand, William M. Hathaway and David E. Frulla of Brand & Lowell, P.C., Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

Plaintiffs, three incumbent officers in the United Brotherhood of Carpenters and Joiners of America ("UBCJA") and eight affiliated union councils, bring this action to prevent the Defendants from installing newly-elected officers prior to the expiration of the incumbents' terms. The parties agreed to maintain the status quo *pendente lite*, and agreed to consolidate the Plaintiffs' request for preliminary injunction with a hearing on the merits pursuant to Fed.R.Civ.P. 65(a)(2). *See* Order, *Rogers v. Lucassen*, Civ. 91–2689 (D.D.C., Oct. 23, 1991). Upon consideration of the Plaintiffs' Motion, the Defendants' response thereto, the arguments of the parties, the record herein, and the applicable law, the Court grants the Plaintiffs' motion for permanent injunction and declaratory relief. This Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## BACKGROUND

The UBCJA held an election at its national convention in October 1991. From all accounts, the election was a hotly-contested race between two warring factions within the union. Defendant Lucassen, the incumbent General President of the UBCJA, sought another term as General President. Plaintiff Rogers, then serving as General Secretary of the Union, challenged Lucassen for the General President position. As part of the Rogers' ticket, Plaintiff Wayne Pierce ran for reelection as General Treasurer, and Plaintiff John McMillan ran for reelection as Second General Vice President. The Defendants' slate of candidates prevailed in the general election.[1]

The day after the election, General President Lucassen issued memoranda to the Plaintiffs Rogers, Pierce and McMillan, requesting them to vacate their offices immediately because their successors, recently-elected Lucassen-slate candidates, had been "duly chosen, qualified and sworn in" earlier in the day. *See* Exhibit 2, attached to Defendants' Memorandum in Opposition to Temporary Restraining Order and Preliminary Injunction (hereinafter, "Def.Opp."). Plaintiffs refused to vacate their respective offices, claiming that they were entitled to remain for a full five-year term which did not expire until April of 1992. *See* Plaintiffs' Memorandum in Support of Temporary Restraining Order, at 8–11 (hereinafter, "Pl.Mem."). Under protest and fearing possible violence, Plaintiffs vacated the building and instituted this action.

Relying upon Section 9C of the UBCJA Constitution, Plaintiffs contend that the Defendants breached a contract between labor organizations, in violation of Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Plaintiffs also allege violations of Section 101(a) of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 411(a)(1) and 411(a)(2), alleging that the rights of the union members who elected the incumbent officers have been abridged by virtue of

---

**1.** Plaintiffs advise that the election results are being contested with the Department of Labor pursuant to Title IV of the Landrum–Griffin Act.

the summary removal of the three anti-Lucassen incumbents. Plaintiffs also allege violations of District of Columbia contract law, and interference with employee benefits in violation of Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.

### I. *Plaintiffs Have Shown That Exhaustion of Administrative Remedies Would Be Futile.*

■ Plaintiffs did not exhaust the available administrative remedies within the union. Although, as a general matter, courts encourage plaintiffs to exhaust administrative remedies available within the union, failure to exhaust administrative remedies may be excused when the Court finds that the Plaintiffs are unlikely to receive a fair hearing due to the hostility of the reviewing officials. *See, e.g., Winter v. Local Union No. 639, Teamsters,* 569 F.2d 146, 149 (D.C.Cir.1977); *Doty v. Sewall,* 908 F.2d 1053, 1061 (1st Cir.1990). The hostility between the two warring factions of the union is palpable. Because many of the officials whose actions are challenged would review the Plaintiffs' administrative complaint, the Court cannot require Plaintiffs to follow that route, especially when time is of the essence.

### II. *Because Defendants' Interpretation of the UBCJA Constitution and By-laws Was Unreasonable and in Bad Faith, and Because the Members' Right to a Meaningful Vote Has Been Denied, The Court Shall Issue Judgment for the Plaintiffs.*

This case begins with the parties' dispute over the Defendants' interpretation of Section 9C of the UBCJA Constitution and By-laws. Section 9C provides, in relevant part:

The election shall be conducted by an Election Committee, the members of which shall be appointed by the General President. No nominee for General Office shall be eligible to serve on said General Committee. Upon completion of the tabulation of the votes, the Election Committee shall report to the General President the names of the General Officers elected and the same shall be reported to the Convention, and those elected shall hold office for a term of three (3) years, commencing April 1, 1979, and thereafter five (5) years, commencing April first following election, and continuing thereafter until their successors are duly chosen and qualified.

*See* Exhibit 2, attached to Plaintiffs' Documents submitted October 31, 1991. Under the Defendants' interpretation of the Constitution, the newly-elected officers may assume office as soon as they are "duly chosen and qualified," without regard to the April 1 date. Plaintiffs, on the other hand, contend that the Constitution, as consistently interpreted by the union, provides that the new term begins in April after the election. Plaintiffs also argue that ejecting the incumbent officers in October—prior to the April date for the expiration of their terms—would deprive these candidates and their constituents of a full *five-year* elected representative.

■ Although a union's interpretation of its Constitution "is entitled to considerable deference," a court may override the union's interpretation if it finds that the interpretation "was unreasonable or made in bad faith." *Monzillo v. Biller,* 735 F.2d 1456, 1458 (D.C.Cir.1984). Union members do not have a cause of action merely for a breach of the union's Constitution or by-laws. *Bunz v. Moving Picture Machine Operators' Protective Union, Local 224,* 567 F.2d 1117, 1120 (D.C.Cir.1977). Rather, in order for a court to exercise jurisdiction over a case in which there is an alleged violation of the union's Constitution or by-laws, there must exist a violation of "a specific right" guaranteed by the labor laws. *Id.* In this instant case, the Court finds that the Defendants' interpretation of the UBCJA Constitution was unreasonable and made in bad faith, and that the Defendants' actions violated the rights of members to a meaningful vote, as guaranteed by Section 101(a) of the Labor Management

Relations Act. *See* 29 U.S.C. § 411(a)(1).[2]

■ Defendants essentially telescope the Court's review and ask the Court to find that, *solely* on the basis of the language of Section 9C, the Defendants' interpretation is sufficiently reasonable to escape judicial review. While the Court agrees that it need not, and should not, engage in parsing the clauses of a union's Constitution and by-laws, the Defendants' proposed analysis is unduly constricted. Consideration of contextual factors is clearly appropriate. *See, e.g., Davey v. Fitzsimmons,* 413 F.Supp. 670, 673 (D.D.C.1976) (courts refer to the "history, purposes, and context of the document involved"); *Taylor v. Great Lakes Seamen's Union, Local 5000,* 701 F.2d 590, 592 (6th Cir.1983) (looking to consistent interpretation of the union's constitution); *Monzillo v. Biller, supra,* 735 F.2d at 1464 (instructing the District Court to "consider the interpretive resolution which was adopted by a majority of the voting members at the National Convention" when determining whether the Board interpreted the union Constitution in bad faith) (dicta). Defendants' line of analysis would incorrectly preclude the Court from considering the union's long tradition of beginning the new term in April and the fact that proposed amendments to the Constitution supporting Defendants' interpretation had been proposed and expressly deferred. Consideration of these factors is especially important in this case, as they unmask the unreasonableness and bad faith inherent in Defendants' interpretation of the Constitution and by-laws.

■ First, the Court finds that, over the course of its existence, the union has interpreted its Constitution to allow newly-elected officers to begin their terms in April, following the election. *See* Exhibits 1–23, attached to Third Affidavit of John S. Rogers (excerpts of union magazines and convention proceedings showing new term to begin in the Spring following the general

elections). In particular, Plaintiffs point to two instances—the Shuey–Konyha election in 1970, and the Cambiano–Sidell election of 1962—in which defeated candidates in an acrimonious election remained in power and retained their titles until the Spring, despite their defeat at the polls. *Id.*

In the face of this tradition, Defendants merely contend that their actions were reasonable because amendments to the Constitution in 1978 diminish the importance of this tradition-based precedent and because most of the prior elections were virtually uncontested. *See* Def.Opp. at 15–16. The Defendants' argument is not persuasive. Despite the bitter contest in the 1962 and 1970 elections, the newly-elected officers abided by the traditional April commencement of the new term and did not assume office earlier. *See* Third Rogers Affidavit, *supra.* Defendants try to escape this rather persuasive precedent by claiming that the 1978 amendments to the union's Constitution somehow establish a new precedent. However, the 1978 Amendments to the Constitution changed *only* the length of the term of office—increasing the term from three years to five years—in order to take advantage of new labor laws allowing longer terms and to decrease the need to hold expensive conventions. Defendants do not dispute the contention of the Chairman of the Committee on Constitution that the 1978 Amendments were not designed to alter the traditional date for the start of the new term. *See* First Affidavit of George Vest, Jr., and exhibits attached thereto. If anything, Defendant Lucassen's own actions manifest the significance of the April date for the new term. *See* First Affidavit of Sigurd Lucassen at ¶ 5, attached to Def.Opp. ("It will be my intention to celebrate in a formal ceremony the installation of this new set of officers on or about the traditional date of April 1, 1992 . . .").

Secondly, and more importantly, the Defendants' did not act reasonably and in

---

**2.** The statute provides, in relevant part, that "[e]very member of a labor organization shall have equal rights and privileges within such organization . . . to vote in elections or referendums of the labor organization, to attend

membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to the reasonable rules and regulations in such organization's constitution and by-laws."

good faith in light of proposed amendments to the Constitution. Two amendments to Section 9C emerged at the 1991 Convention over which Defendant Lucassen presided. One version, proposed by a Canadian group, would provide for five-year terms "commencing thirty (30) days following election" and another version, proposed by an American group, would provide for five-year terms "commencing on the day of their inauguration." *See* Exhibit A to First Affidavit of George Vest, Jr. These amendments were not adopted by the General Convention, but were referred to a Constitutional convention. *See* First Affidavit of George Vest, Jr., at ¶ 15. Rather than waiting for the approval of the Constitutional convention, Defendant Lucassen implemented the proposal in total disregard of the union's determination.

Defendants' attempt to minimize the importance of these proposed amendments is utterly unavailing. Defendants may be correct that the "American" proposal contained a "golden parachute" for incumbent officers,[3] paying them until March 31, 1992 despite the fact that their terms would immediately expire after the election in the event that the amendment passed. However, complaints about the "golden parachute" contained in the "American" proposal are wholly irrelevant. Defendants' argument leaves intact the inescapable conclusion that the American proposal, like the Canadian proposal which Defendants ignore, was a clear effort to *change* the status quo in which officers remained in power until April. The preamble to the American proposal announces quite clearly that the amendment was predicated on the notion that "it would seem more reasonable for the newly elected General Executive Board Members to assume their duties immediately." *See* Exhibit A to First Affidavit of George Vest, Jr. Had the union contemplated that newly-elected officers could assume office immediately, the proposed amendments would have been unnecessary. Thus, the union's decision at the Convention to defer such a proposal should have indicated to Defendants that immediate installation was not appropriate, and the Defendants' decision to eject the Plaintiffs reveals the bad faith and unreasonableness of Defendants' actions.[4]

In *Bunz v. Moving Picture Machine Operators' Protective Union, Local 224, supra,* the Court of Appeals for this Circuit has stated quite clearly that a union "cannot immunize itself from discrimination simply by affording each member the 'mere naked right to cast a ballot'." 567 F.2d at 1121, citing *Young v. Hayes,* 195 F.Supp. 911, 916 (D.D.C.1961). Rather, the Court stated that Section 101(a) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(1), requires that the right of each union member to vote must be "meaningful". *Id.* (citations omitted). Specifically, the Court explained that the refusal to implement the result of a properly-conducted vote denies union members the equal right to suffrage guaranteed by the labor laws, and discriminates against those whose position is disfavored. *Id.* at 1122, citing *Pignotti v. Local 3, Sheet Met-*

---

**3.** Defendants conveniently focus on the American proposal and overlook the Canadian proposal which would have officers assume their duties within thirty days of the general election. The Canadian proposal furnishes no "golden parachute" to the incumbents, but only changes the status quo in which incumbent officers remain in office until April. To this extent, Defendants cannot plausibly contend that the amendments were a disingenuous effort to give the Rogers' slate a gift in the event that they lost the election. Moreover, it is also difficult to imagine that the proponents of the American version of the amendment drafted it with the assumption that Rogers would lose the election. It is more likely that the drafters included the golden parachute as a sweetener, to garner votes despite the fact that something was being taken away from the incumbents, whomever they might prove to be.

**4.** Defendants also claim that Plaintiff Rogers' conduct in writing certain letters and in cleaning out his office indicates Plaintiffs' understanding that their terms were over immediately following the election. *See* Def.Opp. at 16–18. These arguments lack merit. The "evidence" cited by Defendants actually shows that Plaintiff Rogers took these actions *assuming* the passage of the proposed amendments to the Constitution, which would have required the incumbent to allow the newly-elected officers to assume their duties immediately. *See* Exhibits 4–6, attached to First Lucassen Affidavit. *See also* Pl.Reply at 10.

*al Workers,* 343 F.Supp. 236 (D.Neb.1972), *aff'd,* 477 F.2d 825 (8th Cir.), *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973) (union violated Section 101(a)(1) by calling for new votes after members defeated the motion because union refused to implement the negative vote of the union members).

The Defendants' unreasonable interpretation of the union's Constitution in this case violated the rights of union members to a fair and meaningful vote, as guaranteed by 29 U.S.C. § 411(a)(1), in two respects. First, the Defendants' unreasonable construction of the Constitution effectively invalidated the results of the 1986 election whereby the Plaintiff incumbents were elected to a five-year term of office, ending in April of 1992. The Defendants' actions are no different from ejecting an officer in the middle of his or her term, or from refusing to implement a disfavored election result. All that is different in this case is the fact that the Defendants have the right to succeed the Plaintiffs *when their term rightfully commences.* In other words, the fact that Defendants prevailed in the 1991 elections does not give them the right to eject elected officials prior to the expiration of their terms.[5] At bottom, the Defendant Lucassen has used his position to nullify the votes of the majority of the electorate in the 1986 election.

Defendants also violated Section 101(a)(1) in refusing to adhere to the union's decision at the 1991 election to defer consideration and implementation of proposals allowing newly-elected officers to assume their duties immediately after the October 1991 election. Defendants do not dispute that the union, by a democratic vote, determined to postpone any consideration of a proposal which would have changed the union's tradition of beginning the officers' new terms in the April following the convention. Rather than adhere to the members' determination that immediate installation deserved further study, Defendants decided to implement the proposal forthwith on their own initiative.

Defendants attempt to justify overriding the convention's determination because of their fear of the Plaintiffs' alleged malfeasance. However, this argument is disingenuous at best. Both sides slung accusations of wrongdoing at the other during the campaign. Despite these accusations, the electorate decided not to implement a proposal allowing immediate succession. Thus, the Defendants cannot resort to a purity of heart defense in the face of the electorate's determination. By ignoring the members' vote at the 1991 Convention, Defendants have discriminated against the majority of members which determined to postpone consideration of the proposed amendments, and have effectively abrogated the rights guaranteed by Section 101(a)(1).

The Defendants also contend that no Section 101(a)(1) violation has occurred because there has been no discrimination or uneven application of the UBCJA Constitution. Under Defendants' reading of *Calhoon v. Harvey,* 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964), their actions pass muster because their reading of the Constitution does not single out any particular group. Apparently, Defendants' actions are lawful because all union members are subject to the Defendants' new interpretations. The Court of Appeals in this Circuit has already rejected the Defendants' reading of *Calhoon.* The *Bunz* case construed the precedent in *Calhoon* and found that a union discriminates against its members when it denies some of them the right to vote, or when it refuses to implement the results of an election when the outcome is disfavored by those wielding power. *Bunz, supra,* 567 F.2d at 1121. As discussed above, this is precisely what occurred in this case.

### CONCLUSION

For the reasons discussed herein, the Court finds that the Plaintiffs are entitled

---

**5.** Nor can Defendants credibly argue that this case merely exemplifies Plaintiffs' refusal to accede to the 1991 election results. Plaintiffs have indicated willingness to vacate their offices when their terms expire. For the same reason, this case is not one of succession governed by Title IV of Landrum–Griffin.

to declaratory judgment and hereby enjoins the Defendants from ejecting the incumbent Plaintiff officers Rogers, McMillan and Pierce from their respective offices in the UBCJA until the expiration of their five-year terms in April of 1992. Because the Court grants Plaintiffs the relief requested pursuant to 29 U.S.C. § 411(a)(1), the remaining claims in the Complaint are rendered moot.