David W. NOBLE, Jr., Plaintiff,

v.

Vincent R. SOMBROTTO, et al., and National Association of Letter Carriers, AFL–CIO, Defendants.

Nos. CIV.A. 94–302(EGS), [126–1], [127–1], [128–1], [144].

United States District Court, District of Columbia.

April 28, 2003.

David W. Noble, Jr., Gaithersburg, MD, pro se.

Brian Anthony Powers, Nicholas Roman Femia, Donald Joseph Capuano, James Roger O'Connell, O'Donoghue & O'Donoghue, Washington, DC, Elihu Inselbuch Leifer, Victoria Louise Bor, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, Bruce H. Simon, Susan J. Panepento, Peter Herman, Cohen, Weiss & Simon, New York, NY, for Defendants.

### MEMORANDUM OPINION

SULLIVAN, District Judge.

This Memorandum Opinion is issued pursuant to this Court's Order of September 30, 2002.

Plaintiff David Noble, Jr., proceeding *pro se*, brings this action pursuant to 29 U.S.C. § 501(b), alleging that individual defendants, high-ranking officers of the National Association of Letter Carriers, AFL–CIO (NALC), violated their fiduciary duties under the Labor Management Reporting and Disclosure Act of 1959 (LMRDA) (codified as amended at 29 U.S.C. §§ 401 *et seq.* (2003)) by making unauthorized payments to themselves from union funds. Presently pending before the Court are defendants' motions for summary judgment, plaintiff's cross-motion for partial summary judgment, and plaintiff's motion to strike individual defendants' declarations, and all responsive pleadings related to those motions.

Upon consideration of these pleadings, and for the following reasons, defendant NALC's motion for summary judgment [126–1] is **DENIED**, individually named defendants' motion for summary judgment [128–1] is **DENIED**, and plaintiff's cross-motion for summary judgment [127–1] is **DENIED**.

## I. BACKGROUND

NALC is a labor union representing employees of the U.S. Postal Service, with a membership of approximately 300,000 workers. Def. NALC Statement of Facts (NALC Stmt.) ¶ 1, Pl.'s February 26, 2002 Decl. ¶ 3 (Pl.'s Decl.). The individually-named defendants represent the entire membership of the Executive Council, the union's governing body, from at least January 1, 1989 to the date this action was filed.[1] NALC Stmt. ¶ 3. First Am. Compl. ¶ 8.

---

1. During the relevant time frame, individual defendant Vincent R. Sombrotto served as NALC President, Lawrence G. Hutchins as Vice President, Richard P. O'Connell as Secretary–Treasurer, Michael O'Connor as Assistant Secretary–Treasurer, Robert W. Vincenzi as Director of NALC Health Benefit Plan, William H. Young as Director of City Delivery, Walter Couillard as Director of Retired Members, George Davis as Director of Safety

Plaintiff has been a member of NALC for almost thirty years. Pl.'s Decl. ¶ 1. Over the course of this period he has served in several official capacities within the union, and was employed at the NALC headquarters from 1981 to 1993 as an assistant to NALC President Vincent R. Sombrotto, one of the individual defendants in this case. *Id.;* Pl.'s Decl. ¶ 2.

The facts at the heart of plaintiff's claims are undisputed. NALC is governed by a constitution, as amended by National Conventions. Def. NALC's Mem. in Supp. Mot. Summ. J. ("NALC Mem."), Ex. A ("Const."). The NALC constitution establishes a twenty-eight member Executive Council charged with carrying out the daily business of the union. Const. art. 9, § 11. The Executive Council is second only to the National Convention in policy-making and legislative authority for the union. *Id.* The NALC constitution also provides for payment of an annual "sum" to each member of the Executive Council "for faithful performance" of duties outlined therein. Const. art. 9, §§ 1–10, MBA Constitution art. 6, § 18, Health Plan art. 7, § 18. This "sum" may only be adjusted upward by the same percentage increase received by "top grade" letter carriers. Const. art. 9, §§ 1–10, MBA Constitution art. 6, § 18, Health Plan art. 7, § 18. Any increase in this "sum" must be approved by a majority vote of the National Convention. Const. Art. 19, § 1.

Members of the NALC Executive Council were paid money from union funds over and above this annual "sum." Specifically, individual defendants were paid 1) $500 per month for "in-town expenses," for which they were not required to provide receipts, 2) the equivalent of their employee contributions to Social Security and Medicare, and 3) the *per diem* paid to

delegates during the week-long National Convention, held biennially. NALC Stmt. ¶¶ 5, 10, 13; Pl.'s Nov. 19 Stmt. of Mat. Facts ("Pl.'s Stmt."), ¶¶ 17–20, 23–25, 34.

The parties' versions of the facts diverge significantly at this point. While defendants concede that the challenged payments were made and accepted by all relevant parties, they maintain that the payments were made in accordance and conformity with the NALC constitution. NALC Mem. at 25. Defendants further allege that the payments were disclosed to the membership as early as 1986, and that the membership has consistently ratified the payments as appropriate under the constitution. *Id.* at 34–35; Sombrotto Decl., Ex. A, ¶¶ 75–81; NALC Stmt. ¶¶ 28–32. Plaintiff counters that individual defendants have concealed the payment and acceptance of these sums, and argues that defendants' conduct violated the union constitution and breached their fiduciary duties under Section 501(a) the LMRDA. 29 U.S.C. § 501(a); Pl.'s Decl. ¶ 28, 46.

Plaintiff brought internal union charges against all individual defendants in August of 1993, alleging that members of the Executive Council had violated the union constitution by, *inter alia,* accepting the "in town" expense allowance, the *per diem* paid during the National Convention, and payment of the employee share of Social Security and Medicare contributions from union funds. Def. NALC Mem., Ex. N. Although the union constitution sets out a procedure for resolution of such matters, it was not followed with respect to plaintiff's charges. Const. art. 10, Def. NALC Mem., Ex. O. Instead, NALC President Vincent Sombrotto established a five-member investigative committee for the purpose of investigating the charges. Def.

and Health, William Dunn, Jr., as Director of Life Insurance, Souza and Worsham as Trust-

ee members of Executive Council. NALC Stmt. ¶ 4.

NALC Mem, Ex. O, "Presidential Ruling". The committee was directed to prepare a written report to a Special Meeting of the NALC to be held in October of 1993 summarizing its findings. *Id.* After delegates at the Special Meeting voted to reject the charges, plaintiff brought this suit under the LMRDA.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. *Standard of Review*

Summary judgment should be granted pursuant to Fed.R.Civ.P. 56 only if the moving party has demonstrated that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Likewise, when ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975). When determining whether either party has met its burden of establishing the absence of any genuine issues of material fact, factual inferences are considered in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. *Breach of Fiduciary Duty Claims*

Counts II through VIII of the First Amended Complaint assert claims under Section 501(a) of the LMRDA, 29, U.S.C. § 501(a), which provides in relevant part:

The officers, agents, shop stewards and other representatives of a labor organization occupy positions of trust in rela-

tion to such organization and its members as a group. It is therefore, the duty of each such person ... to hold its money and property solely for the benefit of the organization and to manage, invest, and expend the same in accordance with its constitution and by-laws.

Plaintiff specifically alleges that, by authorizing and accepting the "in town" expense payments of $500 per month over and above the annual remuneration levels stipulated in the NALC constitution without itemizing alleged expenses or submitting receipts, authorizing and accepting payment of *per diem* during biennial NALC National Conventions when a full salary, complimentary meals, and lodging were provided to Executive Council during convention periods, and by authorizing and accepting payment of the employee share of their Social Security and Medicare contributions from union funds, individual defendants violated Section 501(a) by expending union funds in a manner not permitted by the NALC constitution. Defendants do not dispute that the challenged payments were made, or that individual defendants were "officers" within the meaning of the LMRDA,[2] but maintain that the expenditures were permissible under the NALC constitution.

Proof that a union constitution has been violated on its face by union officials is not enough, without more, to establish a violation of Section 501(a). *See Rogers v. Lucassen,* 777 F.Supp. 997, 999 (D.D.C.1997). Federal courts "do not possess jurisdiction to enforce union constitutions and by-laws where there has been no violation of a specific right enunciated" in the LMRDA. *Bunz v. Moving Picture Mach. Operators' Protective Union Local 224,* 567 F.2d 1117, 1120 (D.C.Cir.1977). However, where a violation of a union con-

---

**2.** *See* 29 U.S.C. § 402(n).

stitution through unauthorized expenditure of union funds is established, "courts are free to determine whether an expenditure was so unreasonable as to constitute a breach of fiduciary duty under section 501." *Council 49 v. Reach,* 843 F.2d 1343, 1347 (11th Cir.1988). Such unauthorized expenditures are subject to the strictest judicial scrutiny. *See id.*

It is often the case that the issue of whether an expenditure is proper under a union constitution cannot be determined from the document's plain language. Where relevant provisions are ambiguous, it is well-settled that "an interpretation of a union constitution rendered by officials of a labor organization is entitled to considerable deference by a reviewing court, and should not be overruled unless the court finds that the interpretation was unreasonable or made in bad faith." *Monzillo v. Biller,* 735 F.2d 1456, 1458 (D.C.Cir. 1984); *Fahy v. Haas,* Civil Action No. 87–1936, 1987 WL 15932 at *4 (D.D.C. Aug.14, 1987); *see also American Postal Workers v. American Postal Workers,* 665 F.2d 1096, 1101 (D.C.Cir.1981); *English v. Cunningham,* 282 F.2d 848, 850 (D.C.Cir. 1960); *Herman v. International Union of Bricklayers and Allied Craftsmen,* 160 L.R.R.M. 2999, 1998 WL 1039418 (D.D.C. 1998). "Accordingly, courts are loathe to substitute their judgment for that of union officials and will afford due deference to those interpretations which are reasonable and made in good faith." *Caivano v. Laborers' International Union of North America,* Civ. A. No. 95–268, 1995 WL 395908, at *1 (D.D.C. May 3, 1995).

When determining whether union officials' construction of the governing constitution is reasonable, courts have looked to factors such as unanimity, timing, and transparency of decision-making processes, the rationale underlying the interpretation, subsequent approval by higher legislative or decision-making bodies within the union hierarchy, the availability of democratic processes to bring about an appropriate amendment to the constitution, past practices within the union, the likelihood that the interpretation at issue would lead to a breach of trust, support for the interpretation in case law, and avoidance of conflict between different provisions of the constitution. *See Monzillo,* 735 F.2d at 1458 (District Court considered timing and secrecy of Board interpretation of constitution in awarding preliminary injunction; Court of Appeals directed District Court to consider subsequent convention resolution ratifying union's interpretation in determining whether plaintiff's action conferred a substantial benefit on the union for the purposes of awarding attorney's fees); *George v. Local Union No. 639,* 825 F.Supp. 328, 334–35 (D.D.C.1993); *Rogers v. Lucassen,* 777 F.Supp. 997, 1000 (D.D.C. 1991); *Fahy v. Haas,* 1987 WL 15932 at *4–5; *Retail Clerks Union v. Retail Clerks International Association,* 299 F.Supp. 1012, 1027–28 (D.D.C.1969). A number of these considerations are substantially fact-driven, and accordingly may carry differing weights under different circumstances.

Where a union's interpretation of its constitution has been found to be unreasonable, performed in bad faith, or both, courts have been willing to intervene and grant injunctive relief precluding union officials from acting pursuant to their construction. *See Monzillo,* 735 F.2d at 1458 (District Court held Board members' interpretation of union constitution was neither reasonable nor ·conducted in good faith considering timing and secrecy of meeting where decision was made; preliminary injunction issued until approval could be secured at National Convention; Circuit Court held question of whether interpretation was unreasonable and made in bad faith "at best, a close one") (District Court decision reported in *Trine v. Biller,* Civil

Action No. 82–1232, 1982 WL 2038 (D.D.C. May 26, 1982); *Rogers v. Lucassen,* 777 F.Supp. at 999–1001) (defendant union enjoined from removing incumbent officers before the end of their term); *Cefalo v. Moffett,* 333 F.Supp. 1283, 1288 (D.D.C. 1971) (special procedure instituted by union officials to approve dissolution and merger of union District was flawed under union constitution; union enjoined from proceeding with proposed action); *Retail Clerks Union,* 299 F.Supp. at 1019–20 (union enjoined from removing defeated Vice-Presidents from positions as Organizing Directors).

Even where the interpretation of particular provisions of a constitution is not at issue, and the actions of union officials are incontrovertibly authorized by its terms, judicial inquiry pursuant to Section 501(a) of the LMRDA is not wholly improper. Several Circuits have held that the scope of the fiduciary duty envisioned under the statute is not limited to mere compliance with a union constitution. *See Morrissey v. Curran,* 650 F.2d 1267, 1272–74 (2d Cir.1981), *cited with approval in Monzillo v. Biller,* 735 F.2d at 1464; *see also Talbot v. Robert Matthews Dist'ing Co.,* 961 F.2d 654, 666 (7th Cir.1992); *Council 49 v. Reach,* 843 F.2d 1343, 1347 (11th Cir.1988); *Ray v. Young,* 753 F.2d 386, 389 (5th Cir.1985) ("where a Section 501 plaintiff demonstrates that a union officer has benefitted personally from an expenditure, the defendant union must prove, first, that the funds or property were obtained with valid authorization of the union after adequate disclosure, and second, that the expenditure was not manifestly unreasonable."); *Brink v. DaLesio,* 667 F.2d 420, 424 (4th Cir.1981); *In re Johnson,* 139 B.R. 163, 172 (E.D.Va.1992). These courts have held that an additional analytical step is warranted in cases such as this, where the alleged violation of Section 501(a) involves disbursement of union funds for the personal benefit of union officials. Citing to the LMRDA's legislative history, the Second Circuit reasoned in *Morrissey:*

> Although Congress contemplated minimal judicial intrusion and did not intend the [LMRDA] to limit the purposes for which a labor organization's funds could be expended when decisions had been made by members in accordance with their constitution and bylaws, we do not think that Congress thereby intended to establish authorization as a complete defense to s 501 claims. For that would permit a union constitution to vest limitless spending power in union officers and, even where membership vote is required, leave dissenting members powerless to halt abusive practices.

*Morrissey v. Curran,* 650 F.2d at 1272. The prohibition against exculpatory provisions in union constitutions and resolutions embodied in Section 501(a) lends further support to this approach. 29 U.S.C. § 501(a); *see Morrissey v. Curran,* 650 F.2d at 1273. Accordingly, Section 501(a) must be "given its strongest reading in [cases] involving a union officer's diversion of union funds into his own hands." *Ray,* 753 F.2d at 389.

■ In the narrow circumstance where challenged disbursements of union funds personally benefit the officers who authorized them, this Court is persuaded that courts reviewing claims alleging violations of Section 501(a) should not act as mere rubber stamps to any and all actions taken by union officials so long as they are consistent with the plain meaning of the union's constitution or its interpretation by union officials. Accordingly, this Court adopts that portion of the approach advanced by the Second Circuit requiring a determination of whether the expenditures challenged by plaintiff are "so manifestly unreasonable as to evidence a breach of the fiduciary obligation imposed by Section

501(a)" even if they are found to be authorized under the NALC constitution. *See Morrissey v. Curran*, 650 F.2d at 1274.

The fiduciary standard implicated by Section 501(a) is violated when union officials "approve their receipt of excessive benefits, significantly above a fair range of reasonableness." *See Morrissey*, 650 F.2d at 1275. It is well settled that regardless of the particular fiduciary standard that is read into Section 501, undisclosed self-dealing in the context of a relationship of trust is a violation of fiduciary duties. Accordingly, union officials' conduct, where it results in overpayments of thousands of dollars to the officials themselves, has been found to be "manifestly unreasonable" notwithstanding authorization pursuant to a union constitution, thereby giving rise to liability under Section 501. *See Council 49*, 843 F.2d at 1347–48; *Morrissey*, 650 F.2d at 1279; *but see Ray*, 753 F.2d at 393 (increase in cost of providing benefit plan amounting to $9000 over a period of several years not "manifestly unreasonable" in light of official's salary of $700 per week).

In light of the above, it becomes apparent that plaintiff raises three separate and distinct questions with respect to each of the disputed expenditures. The Court must first determine whether the challenged practices violate the constitution on its face. In other words, this Court must determine whether the Executive Council, as well as any union legislative body which may have subsequently ratified its decisions, exceeded its authority by sanctioning the payments in question. If ambiguities exist in the language of the NALC constitution which preclude such a determination, then the Court must decide whether the union's interpretation of the relevant constitutional provisions was "reasonable and made in good faith." Third, even if the Court finds the payments were made in accordance with either the plain text of the constitution or defendants' reasonable interpretation thereof, it remains empowered to find a violation of Section 501(a) if the payments are "manifestly unreasonable."

"[T]he role of the Court in reviewing the decisions of union officials is not to substitute its or plaintiff's judgment" for judgments which are consistent with the fiduciary duty imposed by section 501(a). *See Caivano*, 1995 WL 395908, at *2; *see also Council 49*, 843 F.2d at 1347; *Ray v. Young*, 753 F.2d 386, 390 (5th Cir.1985). However, in order to determine whether the individual defendants' actions are entitled to deference, the three-step analysis outlined above must be conducted with respect to each of the challenged payments, and the appropriate level of scrutiny applied to defendants' conduct under Section 501. *See Council 49*, 843 F.2d at 1347. As a general rule, such determinations have been made following a bench trial, at which testimony was offered and evaluated regarding facts relevant to the factors which should guide the courts' application of the relevant standards. *See, e.g., Ray v. Young*, 753 F.2d 386; *Morrissey v. Curran*, 650 F.2d 1267; *Brink v. DaLesio*, 667 F.2d at 422–23; *Conley v. Parton*, No. H 79–201, 1984 WL 49175 (N.D.Ind. May 3, 1984). If genuine disputes exist on the record with respect to such facts, then summary judgment is not warranted. *See Sabolsky v. Budzanoski*, 457 F.2d 1245, 1252 (3d Cir.1972) (contention that fiscal impact of union interpretation of its constitution alleged to violate section 501 is minimal places in issue the fact and degree of fiscal mismanagement; determination of issue is properly a matter for an evidentiary hearing).

### 1) *In-town expenses*

■ Counts II and III of Plaintiff's complaint concern payments of $500 per

month made to each member of the Executive Council to cover "in-town expenses." First Am. Compl. It is undisputed that these payments were made and received, and that officers were not required to submit receipts for the full amount paid.[3] Pl.'s Mot. for Partial Summary Judgment, Ex. I; Sombrotto Decl. ¶¶ 11, 14. It is also uncontroverted that these disbursements were made pursuant to an Executive Council resolution dated December 8, 1980.[4] Ind. Defs.' Mot. for Summ. J. (Ind. Defs.Mot.), Ex. H. Both parties seek judgment as a matter of law as to this claim.

The NALC constitution sets forth the powers and duties of each member of the Executive Council, and stipulates that

> For the faithful performance of [these] duties, he/she shall receive the sum of [    ] per annum, payable weekly ... provided that future salary adjustments will be made with the same percentage given top grade letter carriers in their salary increases.

Const. art. 9, §§ 1–10.

Plaintiff contends that the "in town" expense payments were unconstitutional because they represent an amount in excess of the annual remuneration set for each Executive Council member in Article 9 of the NALC constitution for which no itemized request for reimbursement or receipts were required. Plaintiff's argument relies on two additional provisions of the NALC constitution: Article 6, § 1 of the NALC constitution, which stipulates that

> In addition to their salaries, all elected officials shall be entitled to reimbursement of all *itemized* expenses legiti-

mately incurred in the conduct of the affairs of the union. [emphasis added]

and Article 11 § 2, which provides

> Sec. 2(a) The Resident National Officers shall constitute the Fiscal Committee. Any three of the Resident Officers may serve as members of the Fiscal Committee.
>
> (b) It shall be the duty of the Fiscal Committee to examine all bills submitted for payment and, if found to be correct, to approve them and authorize payment to be made. All bills shall be itemized.

The record before this Court indicates that some, but not all, Executive Council members submitted itemized written requests for payment of the monthly "in town" expense allowance. See Pl.'s Mot. for Partial Summ. Judgment, Ex. I, Pl.'s Opp'n to Defs.' Mot. for Summ. J., Exs. P–R. These requests were at times accompanied by receipts which, more often than not, totaled less than $500. *See* Pl.'s Mot. for Partial Summ. Judgment, Ex. I, Pl.'s Opp'n to Defs.' Mot. for Summ. J., Exs. P–R. Moreover, this practice was not consistently followed by all individual defendants from 1989 to 1993. *Id.*

Defendants assert that the 1980 Executive Council resolution providing for the "in town" expense payments was proper under Article 9, § 11(e)(3), which authorizes the Executive Council to "authorize and/or ratify the payment of salaries, wages, expenses, allowances, and other disbursements which it deems necessary and appropriate to the purpose of the func-

---

**3.** Defendants maintain that funds accepted as reimbursement of unreceipted expenses were reported to the IRS and treated as income for tax purposes. Sombrotto Decl. ¶ 14.

**4.** For the NALC Health Benefit Plan (HBP) representative to the Executive Council, the allowance was disbursed pursuant to an HBP

resolution dated April 2, 1981. Ind. Defs.' Mot., Ex. I. For the United States Letter Carrier Mutual Benefit Association (MBA) representative to the Executive Council, it was made pursuant to an MBA resolution dated January 13, 1983. Ind. Defs.' Mot., Ex. J.

tioning of this Union, other than provided for."[5] NALC Mem. at 33; Ind. Defs. Mem. at 28. Defendants claim additional authority for the resolution under Article 9, § 11(e)(4), which authorizes the Executive Council to "establish such benefits as may be required to attract and retain competent personnel, including but not limited to annuity, welfare, vacations, holidays, severance pay, tuition or scholarship, and insurance benefits." They further submit that the constitutional provisions cited to by plaintiff for the proposition that expenses and "bills" must be itemized and reviewed by the Fiscal Committee do not preclude payment of a "lump sum" expense allowance such as that at issue here. See Individual Defs.' Opp'n to Pl.'s Mot. for Summ. J. at 6.

It is apparent that the NALC constitution, construed as a whole, is subject to two reasonable interpretations with respect to the reimbursement of expenses incurred by Executive Council members. Accordingly, the "in town" expense payments cannot be found to have been made or accepted in violation of the plain language of the NALC constitution. Moreover, where the provisions of a union constitution are ambiguous and subject to more than one reasonable interpretation, courts are required to defer to a union's construction of its own governing document. Monzillo, 735 F.2d at 1458; Caivano, 1995 WL 395908, at *1.

Nevertheless, such deference is due only if the union's interpretation is found by the Court to have been "reasonable and made in good faith." Monzillo, 735 F.2d at 1458; Caivano, 1995 WL 395908, at *1. The Court's determination of whether the interpretation offered by the defendants was reasonable and made in good

faith implicates consideration of several factors, including, inter alia, transparency of the decision-making process, the rationale underlying the union's interpretation, subsequent approval of union officials' construction of the constitution by a higher legislative body of the union, availability of democratic processes within the union to amend the constitution to reject or affirm the interpretation advanced by union officials, and the likelihood that the officers' interpretation of its constitution could lead to a breach of trust. See Monzillo, 735 F.2d at 1458; George, 825 F.Supp. at 334–35; Rogers, 777 F.Supp. at 1000; Retail Clerks Union, 299 F.Supp. at 1027–28.

Genuine issues of material fact relating to these considerations are apparent on the record currently before the Court, precluding summary judgment in favor of either party. For instance, plaintiff contends, citing to reports submitted by the NALC President to the National Convention over the relevant time frame, that the passage of the 1980 Executive Council resolution was not revealed to the union membership until plaintiff brought internal charges against the individual defendants in 1993. Pl.'s Decl. ¶ 46. Defendants' position is that the membership of the union was well aware of the practice of affording a monthly "in town" expense allowance to members of the Executive Council since at least 1986. Ind. Defs. Mem. at 29–30. In support of this assertion, defendants refer to the proceedings of the 1986 NALC Convention, at which a delegate raised a concern on the floor regarding an annual payment to Executive Council members of $6,000 per year (the equivalent of the $500 per month "in town" expense payments) which was "unaccounted for." Id. at 29. Arguing that a salary increase for Execu-

---

5. The Executive Council Resolution itself cites to Article 9, § 10(e)(3) as the constitutional provision under which it was promulgated. NALC Mem., Attach. 2. No such provision exists in the NALC constitution. Id.

tive Council members was approved following this challenge, defendants submit that the union membership was fully aware of and endorsed the Council's practices with respect to "in town" expenses. *Id.* at 29–30. Defendants further allege that a transcript of the proceedings of the 1986 National Convention was available to all union members, thus giving notice of the practice to future convention delegates. Sombrotto Decl. ¶ 29.

Plaintiff counters that he was present at the 1986 National Convention and yet was unaware at that time of any statements made from the floor regarding the "unaccounted for" expenses, and submits that it therefore cannot be asserted that salaries for Executive Council members were adopted by the National Convention with full knowledge of the existence of a $6000 a year expense allowance over and above the annual remuneration provided for each member of the Council in Article 9, §§ 1–10. Pl.'s Decl. ¶¶ 27–29. Plaintiff also argues that the challenge made on the floor was substantively distinct from the internal union charges he brought in 1993, a fact disputed by defendants. NALC Stmt. ¶ 18. Perhaps more importantly, plaintiff charges that defendant Sombrotto failed to meet his obligation to report the passage of the 1980 Resolution to the membership for approval, as required by Article 9, § 1(j), at any time before plaintiff brought internal union charges in 1993.[6] Pl.'s Decl. ¶ 46. Further, plaintiff has offered evidence that union officials, on several occasions both prior and subsequent to the 1986 National Convention, denied the existence of the challenged payments or represented that they were in fact "accounted for," implying that they were itemized and supported by receipts for union-related expenses. *Id.* Finally, plaintiff disputes the availability to the membership of the challenged Executive Council resolution, and thus union members' ability to otherwise learn of the payments. Pl.'s Decl. ¶ 15. Setting aside for the moment the issue of whether a single question raised by a delegate from the floor of a national convention can constitute adequate notice of an Executive Council Resolution passed six years earlier authorizing $6000 per year in "in town" expense payments to union officials, in light of the factual disputes present on the record, this Court cannot make a determination on motions for summary judgment regarding union officials' "good faith" in adopting the challenged construction of the NALC constitution.[7]

Further, plaintiff raises triable issues of fact with respect to the procedures by which the 1993 internal union charges were investigated and resolved.[8] The pro-

**6.** Article 9, § 1(j) of the NALC Constitution provides:

[The President's] decisions upon all questions of law shall be promulgated by the Secretary–Treasurer and shall be final between Conventions. [The President] shall report all such decisions to the Convention for approval or rejection; such decisions, when approved or revised by the Union, shall have the full force and effect of the General Laws of the Union.

**7.** These factual disputes also preclude summary judgment in favor of defendants on the defense of laches, asserted by individual defendants. Ind. Defs. Mem. at 23. Until the factual question of when plaintiff had actual or constructive notice of the facts underlying his claims is resolved, it cannot be held that he "inexcusably or unreasonably delayed in bringing the claim and that the delay was prejudicial to the defendant." *See White v. Fosco,* 599 F.Supp. 710, 717 (D.D.C.1984).

**8.** It is undisputed that Article 3, § 2 of the NALC Constitution provides for "Special Meetings" such as the one convened to address the report of the Special Committee appointed to investigate plaintiff's internal union charges. However, the nature of the procedures followed by the Special Committee, those followed at the Special Meeting,

priety of these procedures is relevant to the Court's consideration of subsequent approval of the challenged practice by the National Convention, which represents the highest legislative authority under the NALC constitution, a factor strongly urged by defendants in support of a finding that their interpretation was both reasonable and made in good faith. The manner in which plaintiff's internal union charges were investigated and resolved is relevant to a determination of whether the subsequent approval of the challenged practices at the 1993 Special Meeting, heavily relied upon by defendants in support of their construction of the constitution, was in fact properly obtained. *See Brink*, 667 F.2d at 425 (finding motivation underlying procedures adopted relevant to determination of whether authorization was valid). Moreover, because the report of the Special Committee which investigated plaintiff's internal union charges appears to have informed subsequent debates at the 1994 and 1996 conventions, any approval obtained from the National Convention cannot be considered independently of any procedural defects in procurement of the Special Committee's Report.

Resolution of disputed questions of fact regarding transparency of decision-making, disclosure of challenged conduct, and subsequent approval by higher authorities within the union is particularly critical

where, as here, the very union officials who advance a particular construction of the union constitution are alleged to have engaged in self-dealing in reliance on that construction. *See In re Johnson*, 139 B.R. at 173, 175–77, 180–81 (trial testimony regarding how itemized requests for expense reimbursements were arrived at and authorized relevant to determination of whether they were "manifestly unreasonable"); *see also Ray*, 753 F.2d at 389 (defendant union officer must prove that funds or property were obtained with "valid authorization" pursuant to "informed disclosure"); *Brink*, 667 F.2d at 424 (failure to disclose is a question of fact justifying finding of breach of fiduciary duty under Section 501). We are faced here with the "prototypical personal benefit requiring heightened judicial scrutiny:" "cash flowing directly to the union officer from the union treasury." *Ray*, 753 F.2d at 390. The disputed facts implicating lack of transparency in decision-making, failure to disclose the personal benefit, and outright prevarication on the part of union officials, go to the heart of a determination of whether the construction of the relevant constitutional provisions offered by defendants was made in good faith and is entitled to deference by the Court. While the Court by no means wishes to "probe into the reasonableness of every business dinner," it does wish to satisfy itself that, if

and those followed under similar circumstances in the past are a matter of dispute between the parties. Specifically, the union's past practices with respect to investigation of internal union charges pursuant to Article 10 of the NALC constitution are in dispute. Pl.'s Decl ¶¶ 31, 35–36; NALC Stmt. ¶ 24. Plaintiff alleges that procedures followed in the past have consistently allowed the charging party to attend all proceedings, call witnesses, cross-examine witnesses called by the charged party, receive and review transcripts, and review and file objections to the final report summarizing the investigation. Pl.'s

Decl. ¶ 57. He further contends that none of these procedures were followed by the Special Committee appointed to investigate the internal union charges he filed regarding the payments challenged in this case. *Id.* Defendant counters that no such policy or practice is recognized or consistently followed. It goes without saying that the exact nature of the procedures followed by the 1993 Special Committee and Special Convention, along with any deviation from past practices and procedures, is relevant to a determination of whether defendants' conduct was duly authorized, subsequently ratified, or both.

the union's interpretation of the relevant constitutional provisions is to be given deference as "reasonable and made in good faith," it was validly authorized after "informed disclosure." *See id.*

Even if the Court were to defer to the union's proffered construction of the relevant provisions of its constitution, under the line of cases following the Second Circuit decision in *Morrissey,* the defendants' conduct is still subject to scrutiny under the "manifestly unreasonable" standard. Defendants contend that the rationale in *Morrissey,* in which a $400 per month payment to union officials without itemization or submission of receipts, authorized under a "necessary expenses" provision of the union constitution, was unsuccessfully challenged as the equivalent to an unauthorized salary increase, dictates summary judgment in their favor. However, the Court is cognizant of the fact that *Morrissey* was decided with benefit of a record which included testimony heard during a bench trial. While the Second Circuit found the trial testimony in that case to be insufficient to support a finding that the duly authorized monthly expense payment was "manifestly unreasonable," and therefore held that it did not violate Section 501(a), the Court cannot prejudge the evidence here, particularly in light of the significant differences in circumstances between the two cases. This is especially true given that factual issues clearly guided the Second Circuit's determination under the "manifestly unreasonable" standard.[9]

### 2) *Payment of employee Social Security and Medicare contributions*

■ Plaintiff next challenges the union's practice of paying from union funds both the employer and employee shares of Social Security and Medicare contributions for each member of the Executive Council. First Am. Compl. Counts IV, V. An Executive Council Resolution providing for such payments was passed in December of 1980. NALC Mot. Summ J., Ex. L. It is undisputed that these payments were made from union funds and accepted by union officers, and both parties assert that they are entitled to summary judgment on this count.

Union officials again rely on Article 9, §§ 11(e)(3) and 11(e)(4) as the source of their authority for the "social security tax resolution." Ind. Defs. Mem. at 33. The controversy here revolves around whether the payments at issue should be construed as a "fringe benefit," and therefore within the Executive Council's power to authorize, or as part of "salary," and therefore unauthorized without approval by the National Convention. While the union's construction, bringing the payments within the scope of authorized expenditures, would ordinarily be entitled to deference by this Court, underlying factual disputes involving disclosure of the existence of this "benefit," as well as the procedures by which the union's construction of the rele-

9. In *Morrissey,* it was alleged that officers' expenses were being "double paid"—namely that expenses would be paid directly from union funds, and then officers would submit and be reimbursed for vouchers relating to the same expenses by way of the $400 monthly expense allowance. 650 F.2d at 1283–84. Testimony at trial revealed that the person who made the allegations in question left the union before payment of the monthly expense allowance was instituted. *Id.* at 1283. Additional testimony was offered to establish that the monthly expense allowance was intended to cover transportation expenses in an effort to offset the discontinuance of a past practice of providing officials with a union car for business-related travel. *Id.* It was on the basis of this testimony that the Circuit found the evidence insufficient to establish that the allowances were misused in a manner that was "manifestly unreasonable." *Id.* at 1284.

vant language of its constitution is alleged to have been approved by the Convention, similar to those implicated by the challenge to the "in town" expense allowance counsel against deciding the issue on summary judgment.[10]

Moreover, additional factual disputes exist on the record before the Court with respect to the rationale proffered by defendants for adoption of the resolution authorizing the payments at issue. While defendants contend that payments were intended to prevent "double taxation" of Executive Council members for retirement contributions, plaintiff disputes that Council members are subject to any such disadvantage. Ind. Defs. Mem. at 35; Pl.'s Decl. ¶ 45. Because the motivation underlying the defendants' interpretation of the union constitution in favor of authorizing the payment of their own employee Social Security and Medicare contributions from union funds is certainly relevant to a determination of whether they were acting in good faith when interpreting the constitution to their benefit, these contradictions on the record preclude entry of summary judgment in defendants' favor based on deference to the union officials' constitutional construction.

Moreover, the factual dispute surrounding the rationale for the payments remains relevant even if the union's construction of the constitution is given deference by this Court. Union officials' motivations are central to a determination of whether their conduct is "manifestly unreasonable" not-

withstanding its propriety under a union's constitution. *See Brink,* 667 F.2d at 425. Accordingly, regardless of which level of scrutiny is applied to the payment of employee Social Security and Medicare contributions, neither party is entitled to summary judgment as to Counts IV and V.

### 3) *Per Diem during Conventions*

█ In Counts VI and VII, plaintiff alleges that during the NALC biennial National Convention, members of the Executive Council received unauthorized "double compensation" in the form of *per diem* payments intended to compensate delegates to the convention for lost time as well as hotel and meal expenses. First Am. Compl. Defendants do not dispute that they received the *per diem* as alleged. NALC Resp. to Pl.'s Stmt. ¶ 12. Plaintiff argues that because Executive Council members remain on salary during the National Convention, and receive complimentary hotel rooms and meals for some or all of the convention period, their acceptance of the same *per diem* paid to union members who serve as convention delegates results in "double compensation."

The union relies on Article 13, § 2 and Article 11, § 6 of the NALC constitution to justify the contested payments. Ind. Defs.' Mem. at 36. Article 11, § 6 directs that a committee on mileage and *per diem* shall be constituted at each National Convention, and "shall compute and report to the National Convention the name, resi-

---

**10.** *See* Pl.'s Decl. ¶ 46. Defendants again cite to *Morrissey* as outcome determinative, on the grounds that the Second Circuit there approved payment of a union official's income taxes with union funds. 650 F.2d at 1275. However, in *Morrissey,* a factual dispute regarding whether the practice in question was disclosed to the membership was fully developed through trial testimony. *Id.* Furthermore, a careful reading of the facts of *Morrissey* reveals that the union conven-

tion approved a salary increase which would result in the official earning, after taxes, the amount the constitution set as the gross income. *Id.* In this case, the Executive Council simply decided in 1980, six years before the issue was allegedly raised at the 1986 NALC convention, to "pay both sides" of the "social security taxes" for its members directly from union funds, without seeking prior approval from the membership. NALC Mot., Ex. L.

dence, and amount due each member for mileage and per diem." Article 13, § 2 provides in relevant part:

> Section 2. Per diem shall be paid to each officer as the National Association, while in session, may direct.

Plaintiff, on the other hand, cites to Article 11, § 6 of the NALC constitution, which states that a committee on mileage and *per diem* "shall compute and report to the National Convention the name, residence, and amount due each member eligible for mileage and per diem." The committee on mileage and *per diem* is appointed at each convention by the President pursuant to Article 9, § 1(g). Essentially, plaintiff argues that because the names of the officers were not read and individually approved for *per diem* payments at conventions taking place during the relevant time period, and because receipts for convention-related expenses and lost time are not submitted by officers and verified, the National Association has not "directed" such payments to Council members as required by the constitution. Pl.'s Decl. ¶ 40.

Defendants maintain that, since 1986, it has been the practice of the committee on mileage and *per diem* to estimate the cost of lost time, hotel rates, meals and incidentals to convention delegates, and recommend a uniform *per diem* allowance for all delegates, including Council members, rather than accumulating and verifying receipts for each individual delegate. NALC Statement ¶ 8, Ind. Defs.' Stmt. ¶¶ 8–9. They further assert that since this practice has been adopted, *per diem* payments have never been discounted for any delegate on the grounds that they did not actually suffer lost time or did not pay for meals or accommodation, and therefore union officials are treated no differently than any

other delegate. Ind. Defs. Stmt. ¶ 9. Plaintiff disputes these assertions, particularly with respect to union officials.[11] Additionally, he offers evidence that neither the Executive Council nor its members disclosed the routine compensation of officials for expenses they did not incur by way of convention *per diem* payments. Pl.'s Decl. First Am. Compl. ¶ 45.

Once again, the relevant provisions of the NALC constitution, when read together, prove somewhat ambiguous, precluding a finding that *per diem* payments to the Council members violate the document's plain language. In order to determine whether defendants' construction is entitled to deference, factual disputes implicating relevant considerations such as past practices, disclosure, and transparency of decision-making must first be resolved to determine whether defendant's construction is reasonable and made in good faith. These same underlying factual considerations are also relevant to determining whether, even if approved by the membership, payment of the convention *per diem* to union officials under these circumstances is "manifestly unreasonable." *See Ray*, 753 F.2d at 392 (union official's failure to disclose dual reimbursement of expenses negated authorization by membership under heightened scrutiny applicable where there is a direct benefit to official; liability established under Section 501). Accordingly, neither party is entitled to summary judgment on these counts.

### 4) *Investigation Committee and Special Convention*

Plaintiff also seeks in this action a declaration that the procedures followed to investigate and adjudicate the 1993 internal union charges against individual defendants in their capacities as members of the Executive Council were exculpatory ac-

---

**11.** *See* Pl.'s Decl. ¶¶ 39–43.

tions, and therefore void as against public policy under Section 501(a).[12] Defendants properly assert that plaintiff's characterization of the investigations, proceedings and resolutions as exculpatory assumes that the subject matter of these proceedings, namely the challenged actions, were improper. Ind. Defs. Reply at 7. The triable issues of fact underlying these determinations have been discussed in some detail above, and will not be reiterated here.

Moreover, there are disputed facts relevant to whether the investigation procedures followed with respect to plaintiff's 1993 charges were consistent with past practices under Article 10 of the union constitution. See Ind. Defs. Reply at 8. Accordingly, a determination cannot be made at this stage of the litigation regarding whether the challenged procedures followed violated the NALC constitution and 29 U.S.C. § 411(a)(1), (2), and (5). See Cefalo v. Moffett, 333 F.Supp. at 1288 (special procedure instituted by union officials to approve dissolution and merger of union District flawed under union constitution; union enjoined from proceeding with proposed action). Thus, neither party is entitled to summary judgment on this count.

## III. Document production

■ It appears that the essence of plaintiff's claim under Count I of the amended complaint is that he was not provided with all of the documents to which he is entitled under 29 U.S.C. § 431(c), which requires NALC to provide its members with any documents necessary to verify the annual financial reports filed by the union with the Department of Labor pursuant to the LMRDA. Plaintiff's contention is that defendant NALC's obligation under the statute does not extend only to documents relating to the internal union charges he filed in 1993, but rather encompasses any financial documents for which he has established "just cause" under to relevant case law. See 29 U.S.C. § 431(c); Mallick v. International Brotherhood of Electrical Workers, 749 F.2d 771, 780–82, 784, 785–86 (D.C.Cir.1984); Brennan v. International Brotherhood of Teamsters, Civil Action No. 95–1375, 1997 WL 446259 at *2 (D.D.C. July 30, 1997). The defendant counters that plaintiff has obtained all of the documents to which he is entitled under the statute through discovery in this case, rendering this claim moot.[13] Ind. Defs. Mem. in Supp. of Mot. for Summ. J. at 27, 40–42; see Mallick, 749 F.2d at 785–86 (right to documents under 29 U.S.C. § 501(a) no broader than that under § 401(c)); George v. Local Union No. 639, Civil Action No. 89–0916, 1990 WL 140892 at *6 (D.D.C. June 28, 1990) (same).

Most importantly, all parties raise genuine issues of material fact regarding which documents were requested by the plaintiff as well as what responsive documents were provided. See Ind. Defs. Reply at 2–3. Accordingly, the Court will deny summary judgment to all parties without prejudice

12. Plaintiff also alleges that the challenged procedures violated his rights under 29 U.S.C. § 411. Assuming, arguendo, that this provision applies to proceedings such as the 1993 Special Convention, the same factual issues arise with respect to plaintiff's claim under this statute.

13. Defendants incorrectly assert that Magistrate Judge Kay's April 10, 2002 order is conclusive on this issue. Judge Kay's order resolves a single discovery issue, namely plaintiff's entitlement to documents relating to defendants' submissions of receipts and reimbursement for "out of town" expenses. It does not, by any stretch of the imagination, establish that plaintiff has received all of the documents to which he is entitled under the LMRDA.

to refiling on this count at such time as the Court directs.